W. C. BROWN, State Treasurer, Appellee, v. ESTATE OF HANORA DALY (and three other cases), Appellant.

**TAXATION:** Legacy, Inheritance and Transfer Taxes—Treaties—
1 "Most Favored Nation Clause".  The principle of equality of international treatment provided for in a "most favored nation clause" of a treaty with a foreign nation may entirely abrogate the state collateral inheritance tax law, in so far as such law discriminates against alien collateral heirs, citizens of such foreign nation, in the amount of such tax.

PRINCIPLE APPLIED:  Article 5 of the treaty with Great Britain, of March 2, 1899 (31 Stat. 1939, 1940), provides:
"Art. 5.  In all that concerns the right of disposing of every kind of property, real or personal, citizens or subjects of each of the high contracting parties shall in the dominions of the other enjoy the rights which are or may be accorded to the citizens or subjects of the most favored nation."
It was shown that treaties with Germany and other nations prohibited discriminations in the exaction of succession taxes.  *Held,* therefore, that, under said Sec. 5, such discriminations against the citizens of Great Britain were prohibited.

**TREATIES:**  Construction—Inheritance.  To abridge the right of a
2 devisee "to receive" abridges the right of a devisor "to give", and *vice versa;* therefore, *held* that the clause, "In all that concerns the right of disposal of property", contained in the treaty of March 2, 1899, with Great Britain, applies to the right to receive, as well as the right to give.

*Appeal from Allamakee District Court.*—HON. A. N. HOBSON, Judge.

SATURDAY, OCTOBER 30, 1915.

ACTION by the state treasurer against the administrator of the estate of Hanora Daly to recover a collateral inheri-

tance tax in excess of 5% upon the shares of certain alien beneficiaries. It is averred that such alien beneficiaries consist of a brother of the deceased and certain nephews and nieces. Plaintiff obtained a judgment as prayed in the district court. The defendant has appealed.—*Reversed.*

*William S. Hart, H. E. Taylor, Dayton & Dayton, D. J. Murphy,* and *J. P. Conway,* for appellant.

*Calvin S. Stilwell,* County Attorney, and *George Cosson,* Attorney General, for appellee.

EVANS, J.—If our statute relating to a succession tax upon collateral inheritance can be applied according to its terms, then it is conceded that the judgment below should be affirmed. It appears, however, that the collateral heirs involved in this case are subjects of Great Britain and that, in ascertaining their rights, reference must be had to the terms of the treaty existing between the United States and Great Britain. Articles 1, 2, and 5 of such treaty are as follows:

1. TAXATION: legacy, inheritance and transfer: taxes: treaties: "most favored nation clause."

"Article 1. Where, on the death of any person holding real property (or property not personal) within the territories of one of the contracting parties, such real property would, by the laws of the land, pass to a citizen or subject of the other, were he not disqualified by the laws of the country where such real property is situated, such citizen or subject shall be allowed a term of three years in which to sell the same, this term to be reasonably prolonged if circumstances render it necessary, and to withdraw the proceeds thereof, without restraint or interference, and exempt from any succession, probate or administrative duties or charges other than those which may be imposed in like cases upon the citizens or subjects of the country from which such proceeds may be drawn.

"Article 2. The citizens or subjects of each of the contracting parties shall have full power to dispose of their personal property within the territories of the other, by testament, donation, or otherwise; and their heirs, legatees, and donees, being citizens or subjects of the other contracting party, whether resident or non-resident, shall succeed to their said personal property, and may take possession thereof either by themselves or by others acting for them, and dispose of the same at their pleasure, paying such duties only as the citizens or subjects of the country where the property lies shall be liable to pay in like cases.

"Article 5. In all that concerns the right of disposing of every kind of property, real or personal, citizens or subjects of each of the high contracting parties shall in the dominions of the other enjoy the rights which are or may be accorded to the citizens or subjects of the most favored nation."

The estate in question includes both real and personal property. The decedent was a citizen and subject of the United States, whereas her heirs are citizens and subjects of Great Britain. We had occasion to construe Article 1, as pertaining to the descent of real property, in the case of *McKeown v. Brown*, 167 Iowa 489. Likewise, we construed Article 2, as pertaining to the succession to personal property, in *Moynihan's Estate*, 172 Iowa 571.

Appellee recognizes that adherence to the cited cases would require a reversal of the judgment below. He urges, therefore, that these particular cases should be overruled. In the *Moynihan* case, a petition for a rehearing is pending, and the argument presented in support of the petition is presented also here, in support of the judgment below. We will give our first consideration to this branch of the case. Broadly speaking, the claim is that Article 2 of the treaty with Great Britain has no application to a case where the decedent was a citizen and a subject of the United States,

but only to those cases where the decedent was a citizen and a subject of Great Britain. This claim rests upon the language of the first clause of such Article 2. On the other hand, it is contended for the appellant that (1) Article 2, in its entirety, clearly applies to citizens and subjects of Great Britain who shall succeed, by testament or otherwise, to any personal property within the territories of the United States; and (2), if the particular article will not bear such construction according to its terms, then, under the "most favored nation" clause (Article 5), such construction must be applied to Article 2, because of treaty provisions with other nations.

We will give our first consideration to this question. The parties have brought into the record many of our treaty provisions with other nations, now in force. Many of them have been set forth by the appellee, for the purpose of differentiating between them and Article 2 of the British treaty. We quote the following from other treaties:

Article 10 of the treaty with Germany:

"In all successions to inheritances, citizens of each of the contracting parties shall pay in the country of the other such duties only as they would be liable to pay if they were citizens of the country in which the property is situated or the judicial administration of the same may be exercised."

Article 8 of the treaty with Honduras:

"In whatever relates to the police of the ports, the lading and unlading of ships, the safety of the merchandise, goods and effects, the succession to personal estates by will or otherwise, and the disposal of personal property of every sort and denomination, by sale, donation, exchange, testament, or in any other manner whatsoever, . . . the citizens of the two high contracting parties shall reciprocally enjoy the same privileges, liberties, and rights as native citizens, and they shall not be charged in any of these respects with any higher

imposts or duties than those which are paid or may be paid by native citizens."

Article 8 of the treaty with Nicaragua:

"The foregoing provisions shall be applicable to real estate situated within the states of the American Union, or within the republic of Nicaragua, in which foreigners shall be entitled to hold or inherit real estate. But in case real estate situated within the territories of one of the contracting parties should fall to a citizen of the other party, who, on account of his being an alien, could not be permitted to hold such property in the state in which it may be situated, there shall be accorded to the said heir, or other successor, such time as the laws of the state will permit to sell such property. He shall be at liberty at all times to withdraw and export the proceeds thereof without difficulty and without paying to the government any other charges than those which would be paid by an inhabitant of the country in which the real estate may be situated."

Article 9 of the treaty with Argentine:

"In whatever relates to the police of the ports, the lading and unlading of ships, the safety of the merchandise, goods and effects, and to the acquiring and disposing of property of every sort and denomination either by sale, donation, exchange, testament, or in any other manner whatsoever, as also to the administration of justice, the citizens of the two contracting parties shall reciprocally enjoy the same privileges, liberties and rights, as native citizens, and they shall not be charged, in any of those respects, with any higher imposts or duties than those which are paid or may be paid by native citizens, submitting, of course, to the local laws and regulations of each country respectively."

Manifestly, therefore, if the "most favored nation" clause is applicable to the case, the subjects of Great Britain, as collateral heirs, are entitled to immunity from discrimination

under the terms of treaties with other nations, as above quoted, even though such immunity had not been provided for in express terms under Article 2 of the treaty with Great Britain.

It is contended by appellee, however, that Article 5 has no application to the case. In support of this contention, emphasis is put upon the first clause of Article 5: "In all

2. TREATIES:
construction:
inheritance.

that concerns the right of disposing of every kind of property." It is argued that this article does not purport to deal with the right of receiving property. It will be noted that Article 5 does not limit itself to the protection of "the right of disposing", but purports to apply to "all that concerns the right of disposing". The right of the donor to give and the right of the donee to receive the gift are interdependent. They are parts of the same thing. To abridge the one is to abridge the other. Surely, therefore, the right of a donee to receive is something which "concerns the right of disposing".

We think, therefore, that the appropriate construction of Article 5 makes it applicable to the case before us. If applicable, its effect is to give to subjects of Great Britain the benefit of the more favorable provisions, if any, of our treaties with other countries. Whatever ambiguities there may be, therefore, in Articles 1 and 2 of the treaty with Great Britain, they are quite eliminated by the specifications contained in other treaties, as above quoted.

Sufficient to say that, for the purpose of the case at bar, Article 5 of the treaty is decisive. The judgment below must, therefore, be reversed. Three other like cases were, by stipulation, submitted with this case, and all are governed by the same considerations. Our conclusions herein are, therefore, decisive of them all, and an order of reversal will be entered in each case.—*Reversed.*

DEEMER, C. J., LADD, WEAVER, GAYNOR, PRESTON and SALINGER, JJ., concur.