MARY URBUS *v.* STATE COMPENSATION COMMISSIONER *et al.*

(No. 7539)

Submitted April 11, 1933.   Decided April 18, 1933.

*Olin C. Carter,* for appellant.

*Homer A. Holt,* Attorney General, and *R. Dennis Steed,* Assistant Attorney General, for respondents.

HATCHER, JUDGE:

This appeal involves the application of an international treaty between the United States and Serbia to a state statute.

Andy Urbus, a citizen of Serbia (now a part of Yugoslavia), was killed on January 14, 1932, while at work in the mines of the Davis Coal & Coke Company. The company notified the compensation commissioner of the fatality on January

21, 1932, stating that the deceased was an Austrian, that he was married, and that his wife resided in "the Old Country." The matter then rested until the commissioner received a letter dated March 31, 1932, from the Consul of Yugoslavia at Pittsburgh (who had that day learned of the death of Urbus), stating that the widow of the deceased was living in Yugoslavia and requesting the necessary forms to file her claim. That letter was received by the commissioner on April 4th and forms were sent to the Consul on April 6th. The application for compensation was executed in Yugoslavia by Mary Urbus, the widow of the deceased, on June 3, 1932, and was received by the commissioner on August 5, 1932. The commissioner entered an order on October 20, 1932, refusing compensation on the ground that the application was not filed within six months from the death of Urbus, as required by Code 1931, 23-4-15. The petitioner contends that the ruling of the commissioner disregards her rights under the Serbian treaty with the United States.

Yugoslavia, according to 23 Ency. Brit. (14th Ed.), page 916, is "a convenient name for the Serb, Croat and Slovene State which originated at the end of 1918 by the union of parts of the former Austro-Hungarian empire with Serbia, and at a slightly later date with Montenegro." The treaty between the United States and the other Principal Allied Powers on the one hand and The Serb-Croat-Slovene State on the other hand, signed at Saint-Germain-en-Laye, on September 10, 1919, provided that all treaties between Serbia and any of the Principal Allied Powers which were in force on August 1, 1914, should be binding on the Serb-Croat-Slovene State. The treaty between the United States and Serbia in force in 1914, contained the following provisions: "In the case of the death of any citizen of the United States in Serbia, or a Serbian subject in the United States, without having any known heirs or testamentary executors by him appointed, the competent local authorities shall give information of the circumstance to the consuls or consular agents of the nation to which the deceased belongs, in order that the necessary information may be immediately forwarded to the parties interested."

The Constitution of the United States, Article VI, makes

this treaty a portion of "the supreme Law of the Land", and provides that "the Judges of every State shall be bound thereby." Consequently the treaty must be given due significance in applying a state statute. Buente, International Law, 211; 6 R. C. L., Constitutional Law, section 33; 38 Cyc., Treaties, p. 977. We did so with a like treaty in the parallel case of *Papadaki* v. *Commissioner*, 111 W. Va. 15, 160 S. E. 224. In that case the statutory bar of six months was lifted because the employer had failed to forward application forms to the foreign claimant and the commissioner had failed to communicate directly with her' or advise the consular officer concerning the death of her husband—the identical derelictions of duty which occurred in the instant case. In *Culurides* v. *Ott,* 78 W. Va. 696, 700, 90 S. E. 270, 271, a defeasance was not permitted against a Greek subject, though the application was filed twelve days after the six months period had expired, an attempt having been made to prepare and file the application within the six months. The court said: "In these circumstances, to refuse to allow the claim of dependents ignores the liberality which the statute requires to effectuate its purposes." Here the application did not arrive until twenty-one days after the statutory period had run, but a like attempt was made by petitioner to present a timely application. While the report of the fatality to the commissioner on January 21, 1932, stated that Urbus was an Austrian, the commissioner took no steps whatever to investigate that statement. If he had done so and a diligent investigation had failed to disclose that Urbus was a Serb, the situation would be somewhat different. If the inaction of the commissioner for two months can be condoned, his passivity for the entire six months could as well be overlooked, which would destroy the effect of the treaty. This cannot be done. It was the commissioner's duty under our statutes as well as under the Serbian treaty, to take prompt action. We are therefore of opinion that the interval in which he was inactive should not be included in the statutory period, as against the petitioner.

The ruling of the commissioner is accordingly reversed, and the case remanded with instructions to consider petitioner's claim upon its merits.

*Reversed and remanded.*