In the Matter of the Estate of HENRY A. HANSEN, Deceased.

Surrogate's Court, Monroe County, April 12, 1935.

*James E. Cuff*, for the petitioner.

*B. B. Coyne* [*A. J. Bedard* of counsel], for the Danish Consul General.

FEELY, S. The question recurs as to a foreign consul having a right to "appear for" his minor nationals before the service of any process upon them, and to waive the issuance and service of a citation upon them, for the judicial settlement of this estate in which one of them is a distributee.

The facts are that Henry A. Hansen, a resident of Monroe county, died there on October 5, 1930, intestate, leaving as his nearest kindred some brothers and nephews, all subjects and residents of the Kingdom of Denmark. Although the Danish Consul General appeared, the then county treasurer, under his unquestioned prior right, was awarded letters of administration.

Now the administrator has filed his account for final settlement; and the Danish Consul General at New York, for the purpose of saving the expense of service of citation, asserts a treaty right to appear for, and waive service on behalf of the alien minor distributee, Erik Jeppe Hansen, who was born January 31, 1921.

For many years this court has followed the rule laid down in *Matter of Peterson* (51 Misc. 367) and *Matter of Nyahay* (66 id. 418), summarized recently by Surrogate DELEHANTY: " Appearance by a consular officer seems not to be authorized until after such service." (*Matter of Clark*, 152 Misc. 723.) Counsel for the consulate now criticizes each of those cases, the first of which related to his own Danish treaty; and he now cites a contrary ruling said to have been made in *Matter of Bech*, as Danish Consul General, in the estate of Emilie C. W. Peterson, reported in the New York Law Journal of December 14, 1927. The quotation in the brief shows the minor's share was there properly ordered paid to the Consul; but whether the surrogate actually held that the minor need not have been cited has not yet been ascertained. With even those two Peterson cases seemingly at odds, and with the right of a foreign consul questioned, the local practice must be scrutinized to see if it be upheld by established principles.

When the State of New York concurred in creating the power " to make Treaties " (U. S. Const. art. II, § 2), it ceded to the President, acting with the advice and consent of two-thirds of the Senate, only so much of its presumably unbounded sovereignty as was thought necessary for the welfare of the Union in respect of interstate and international matters; and under the Ninth and Tenth Amendments, as the recipient of that treaty-making power took in the right of another, the delegated power is deemed not to extend any further than the general terms of that grant fairly imply in view of the object to be thereby attained.

At no time or place has it ever been questioned that as regards the devolution of property at death, which is a wholly statutory matter, the entire *lex loci* is supreme as to the descent of lands, even in the hands of aliens; and also as to the distribution of the movable property of persons there domiciled. This field of law has no essential feature of either an interstate or an international character. This field is almost everywhere recognized as private or local law.

This supremacy in respect of the substantive law necessarily extends to the procedural steps taken to apply and administer those exclusively local statutes. Even where movable property passes according the law of the foreign domicile of its sometime owner, all the procedure of taking it into legal possession here for

the purpose of surrendering it for transmission abroad, after local claims thereon have been satisfied, is the procedure of the local tribunal, modelled after that followed in merely domestic cases.

New York never had any need to, nor ever did cede to its treaty making delegate any right to modify the New York law of descent and distribution, or any of its incidental procedural accessories — aside from taxation. So, there is probably no treaty to be found without a stipulation that whatever be the representative powers conceded to a foreign Consul here, they were, nevertheless, to be exercised here " so far as the laws of each country will permit," or " conformably to the laws " of the respective local tribunals to which the application might be made. And so, another like phrase, commonly found in treaties, in reference to the alien party in interest being, at some point of time, " duly represented," has been held to mean such representation as was in accordance with the law of the forum. (*Matter of Gruner*, 149 Misc. 341.) All this simply accords with the counsel given by the Bishop of Hippo, " When in Rome, do as the Romans do." Such phrases are declared in the leading case on this point, *Matter of D'Adamo* (212 N. Y. 214), to maintain the " continuity of the purpose, revealed repeatedly in conventions and treaties throughout our history, to subject the rights of consuls to the requirements of local law." *Matter of Tripodi* (137 Misc. 738) is the latest reiteration of those principles.

In our treaties with Denmark such a reservation appears in several connections — *first*, as to Danes, in enjoying trade rights along our coasts, " submitting themselves to the laws, decrees and usages there established, to which native citizens or subjects are subjected; " *second*, in the stipulation as to reciprocity in the matter of inheritance taxes; and *lastly*, as a limitation on the customary immunity of consuls. The right of the Danish Consul, now in question, " to appear for minors " is derived from treaties with others, through the " most favored nation " provision in the Danish treaty; but this is to be read in the light of the similar accompanying restrictions, and of general principles.

Among those purely local laws that have never been abridged in consequence of any cession of the power to make treaties as to matters of international concern, is the section of the Surrogate's Court Act (§ 41) which sets out the procedural side of the surrogate's jurisdiction, about as it had developed up to 1914, with a clarification of the right to appear. The revisers noted that " Most Surrogates now refuse to allow an attorney to appear for a person not cited without written authority. Any other practice would be dangerous especially in the cities." (Note to § 2511, Code Civ. Proc. Revision of 1914.) (See, also, *Matter of Ford*, 98 Misc. 100.)

So they based this section (Surr. Ct. Act, § 41) on a threefold classification of the methods whereby the surrogate acquired jurisdiction of certain persons: *First*, by the petitioner's own personal submission, of the " petitioner; " *second*, by the fact that anybody has " been duly cited," and this without any reference to their age; and *third*, of " persons of full age," who have either waived, or appeared in person or by attorney, in a specified manner and form not now necessary to detail. This section 41 is as exclusive on the ways in which a general appearance is effected (*Matter of Schlemmer*, 135 Misc. 296) as is the somewhat similar section 237 of the Civil Practice Act (*Robinson* v. *Robinson*, 123 Misc. 80; affd., 209 App. Div. 896) in its field.

This phrase " persons of full age," in subdivision 3 of section 41 of the Surrogate's Court Act, restricts to adults the cases in which jurisdiction of their person can be had either by waiver, or by any form of appearance, whether by attorney in fact, or at law, or by foreign Consuls.

These latter are international attorneys in fact, acting without any *special* authority from the parties in interest. (*The Bello Corunes*, 6 Wheat. 152, 168.) Their power is unlike that of the private attorney in fact in two other respects — it extends even to alien minors as *quasi* principals; and the power does not cease upon the death of the assumed principals. It is purely governmental representation, resting on international conventions. Its existence, at no time, alters the alien minor's status as an infant at home. These Consuls are not exempt from the rule laid down in section 41 that jurisdiction depends — aside from cases of waiver or appearance by adults — upon either service of citation, or on the party himself being the petitioner. Under this last head, it is possible that a foreign minor might personally become a " petitioner " in surrogate practice (Jessup-Redfield, § 123, p. 207); but even then, the Consul's right to appear for such a petitioner would be a consequent one only.

The phrase " to appear for " an other is essentially one of agency; and while it may mean either, it more commonly means to intervene in a proceeding already begun than it does to begin one. Even where a Consul begins a proceeding, his initial steps must be taken " in conformity with the law " of the tribunal to which he resorts, especially in a purely local matter.

This State rule clearly denies any right to appear for, or to waive service of process for a non-cited minor party, whether domestic or foreign. If, then, there be any doubt as to whether this State's delegated treaty-maker, by his use of the ambiguous phrase " appear for minors," meant to abrogate this State process

rule in conceding to foreign representatives here the anomalous privilege of acting as attorneys in fact for minors, the doubt should be settled in favor of the sovereignty of the State that created the power, especially in a purely local matter, and against the inferential extension of the grant beyond the terms and purpose for which it was given; for there is no international exigency that requires our rules on threshold notice, especially in wholly statutory matters, to be abrogated, whereas in the diversity of foreign practice in respect of guardianship and authentication, and the time required for intercommunication, it is the more expedient and expeditious course to allow the governmental agent here to act as the representative even of his minor nationals, who for all that never cease to be minors, even at home; because on receipt of the minor's share, the Consul must transmit it abroad to the " guardian " or other person appointed as such in accord with the " family council " or other customary method, to hold and apply it to the use of the infant as such. Eliminating those foreign difficulties is one thing; but our New York *lex fori* on the steps to be taken by all who approach our probate tribunals, even for minor principals abroad, to obtain their rights under our *lex loci*, is quite a different matter. As any such modification of the universal *lex fori* was " not *expressly* covered by the treaty between the United States and the kingdom of Denmark, or any other country, the laws of the State of New York must govern." (*Matter of Peterson, supra.*) In this respect, Surrogate MILLARD correctly said that " I cannot conceive it possible that greater privileges *could* be granted to alien infants than are given to our own, residing in this State; and it has been settled * * * that even a general guardian appointed for minor infants cannot waive the issuance and service of a citation." (*Matter of Nyahay, supra.*) All the treaty provision, allowing such an agent for such a principal " to appear for minors," could legally have intended is satisfied by allowing the Consul, after his minor national either has been brought into court regularly under the *lex fori*, or has subjected himself to it by his own personal petition, then to appear for the minor in the sense of intervening on his behalf. We are not now concerned with the consequences of that intervention; even though some courts have gone so far as to say that such intervention may then be without the necessity of a special guardian being appointed, provided none had already been appointed before the Consul intervened.

No case has been cited to this court which has been found to clearly hold that a Consul can confer initial jurisdiction of an uncited infant party in interest in a Surrogate's Court matter. In principle, the right of the Consul to intervene is quite like his

right to letters of administration under the modern procedure. Leaving out of consideration the older New York cases that were predicated on a wording of the statute that is now obsolete, the greater weight of analogous authority favors the local practice now in question. The Consul's right to letters of administration is subordinate to the priorities expressed in the local law. While the contrary is held in Massachusetts, where a treaty expressly mentioned the right to administer (*Matter of Wyman*, 191 Mass. 276; 77 N. E. 379), the majority of the other jurisdictions take the same position as did New York in *Matter of D'Adamo* (212 N. Y. 214), subjoining the Consul to the end of the list of those entitled to letters. So, in *Hamilton* v. *Erie R. R. Co.* (219 N. Y. 343) the Consul was held not entitled as such to settle on behalf of Russian minor children of the deceased a statutory cause of action for negligent killing. Maryland has held that a Consul cannot, by virtue of his office as such, claim the right to letters (*Chryssikos* v. *Demarco*, 134 Md. 533; 107 A. 358); and the prior right of the public administrator to that of the Consul to letters has been declared in *Rocca* v. *Thompson* (223 U. S. 317) and *Pagano* v. *Cerri* (93 Ohio St. 345; 112 N. E. 1037; L. R. A. 1917A, 486).

The Ruling Case Law states (Vol. 9, p. 158): "In the absence of any other representative of the deceased having a better right, a consul is authorized to intervene in the possession of the estate conformably to the laws of the country," citing *United States* v. *Eaton* (169 U. S. 331); *Estate of Ghio* (157 Cal. 552; 108 P. 516; 37 L. R. A. [N. S.] 549); *Succession of Rabasse* (47 La. Ann. 1452; 17 So. 867).

This court, therefore, will not entertain the judicial settlement herein until the Danish minor party in interest has been duly brought before this court in the same manner as any non-resident minor becomes a party to a proceeding in Surrogate's Court.

Enter an order for issuance of a citation accordingly, and declining any notice of appearance, or waiver of citation, in lieu thereof.