Jelena Micaz *v.* Compensation Commissioner *et al.*

(No. 9162)

Submitted January 8, 1941. Decided January 28, 1941.

*H. W. Dushkoff,* for appellant.

*Clarence W. Meadows,* Attorney General, and *Kenneth E. Hines,* Assistant Attorney General, for appellees.

RILEY, JUDGE:

Jelena Micaz appeals from an order of the workmen's compensation appeal board, affirming the ruling of the compensation commissioner denying a claim filed on behalf of herself and her infant son, Dusan Micaz, age eleven years, for compensation for the death of her husband, Antonio Micaz.

Decedent, an American citizen, naturalized on July 16, 1932, was killed on November 26, 1939, during the course of and as a result of his employment with the Raleigh Wyoming Mining Company. Claimants are Italians living in Yugoslavia, who, at the time of decedent's death, were dependent upon him. Compensation was refused on the ground that claimants are "non-resident alien bene-

ficiaries" within the meaning of section 15-a, article 4, chapter 137, Acts of the West Virginia Legislature, 1939, which provides as follows:

"Notwithstanding any other provisions of this chapter, no benefits under any of the provisions of this chapter and no commutation of periodical benefits under the provisions of section seventeen of this article shall be made to nonresident alien beneficiaries on account of any accident occurring after the effective date of this act. Nonresident alien beneficiaries within the meaning hereof shall mean persons not citizens of the United States residing outside of the territorial limits of the United States at the time of the injury with respect of which benefits would otherwise have been payable to them in the absence of such nonresident alienage. In case of nonresident alien beneficiaries entitled under prior law to benefits on account of accidents occuring prior to the effective date of this act, the commissioner in his discretion may make, and such beneficiary shall be required to accept, commutation of such benefits into a lump sum settlement and payment, at the rate of one-half of like benefits to resident beneficiaries."

The first question which presents itself is what effect, if any, did decedent's naturalization have upon claimants' legal status? A claimant must have two attributes in order to come within the inhibitory provisions of the statute, that is, alienage and non-residence. Thus, if claimants became citizens by virtue of decedent's naturalization, or if decedent's residence is to be taken as theirs, their claims should be allowed.

The naturalization of a husband or parent, however, does not of itself make an alien wife or alien minor child, residing outside of the United States, a citizen. U. S. C. A., 1940 Cumulative Annual Pocket-part, Title VIII, Section 8, (Mar. 2, 1907, c. 2534, sec. 5, 34 Stat. 1229, as amended May 24, 1934, c. 344, sec. 2, 48 Stat. 797), provides that a child born without the United States of alien parents shall be deemed a citizen of the United States by

virtue of the naturalization of or resumption of American citizenship by the father or mother, provided such naturalization or resumption shall take place during the minority of such child, and that the citizenship of such minor child shall begin five years after such child begins to reside permanently in the United States. U. S. C. A., 1940 Cumulative Annual Pocket-part, Title VIII, section 368 (Sept. 25, 1922, c. 411, sec. 2, 42 Stat. 1022, as amended May 17, 1932, c. 190, 47 Stat. 158; May 24, 1934, c. 344, sec. 4, 48 Stat. 797) provides in part that an alien whose husband or wife has been naturalized after September 22, 1922, shall not become a citizen of the United States by reason of such naturalization, but, if eligible for citizenship, may be naturalized upon compliance with the requirements of the naturalization laws, except that (a) no declaration of intention shall be required, and (b) the residence requirement is reduced to three years immediately preceding the filing of the petition.

However, claimants' counsel says that under the rule that the domicile of a husband or father is held to be the domicile of the wife or child, the claimants are residents of the United States, and, therefore, do not come within the provisions of the West Virginia statute. The law of domicile and residence is quite confused. In the construction of a statute the confusion should, and can in most cases, be solved from the context and apparent object sought to be attained by its enactment. *Dean* v. *Cannon,* 37 W. Va. 123, 127, 16 S. E. 144; Jacobs, Law of Domicil (1887), section 75.

In this case we have found no difficulty in ascertaining what the Legislature intended by non-resident alien beneficiaries. In fact, the Legislature has furnished us with a definition: "Nonresident alien beneficiaries within the meaning hereof [the statute] shall mean persons not citizens of the United States residing outside of the territorial limits of the United States at the time of the injury with respect of which benefits would otherwise have been payable to them in the absence of such nonresident alienage." We think that the Legislature intended by the word "nonresident" a person actually residing or

living outside of the United States, and that it was not referring to domicile or legal residence. Claimants thus come within the inhibitory provisions of the statute. They are barred from recovery unless, as their counsel asserts, their claims are saved by treaty with Italy or, under the "most-favored-nation" theory, with some other country. Of course, under Article VI of the Constitution of the United States "all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." See *Urbes* v. *Compensation Commissioner*, 113 W. Va. 563, 169 S. E. 164; *Papadaki* v. *Compensation Commissioner*, 111 W. Va. 15, 160 S. E. 224, cases decided prior to the enactment of the instant statute.

Reliance is had upon Article III of the treaty of 1871 between the United States and Italy (17 Stat. 846), as amended in 1913 (38 Stat. 1669, 1670). Article I of this amendment provides:

> "The citizens of each of the High Contracting Parties shall receive in the States and Territories of the other the most constant security and protection for their persons and property and for their rights, including that form of protection granted by any State or national law, which establishes a civil responsibility for injuries or for death caused by negligence or fault and gives to relatives or heirs of the injured party a right of action, which right shall not be restricted on account of the nationality of said relatives or heirs; and shall enjoy in this respect the same rights and privileges as are or shall be granted to nationals, provided that they submit themselves to the conditions imposed on the latter."

It is to be noted that this article provides for the security and protection of citizens of the contracting parties in their persons and property and in their rights "including that form of protection granted by any State or national law which establishes a civil responsibility *for injuries or for death caused by negligence or fault* and gives to

relatives or heirs of the injured party *a right of action,* which right shall not be restricted on account of the nationality of said relatives or heirs * * *." (Italics supplied.) In no part of the treaty is any reference made to civil responsibility for death or injuries occurring without fault or negligence. Article I of the amendment to the treaty was considered by the Supreme Court of the United States in *Liberato* v. *Royer,* 270 U. S. 535, 46 Sup. Ct. 373, 70 L. Ed. 719, a case which in principle coincides with the instant case. There claimants were Italians living in Italy and the dependent parents of a decedent who was killed while working for an employer subject to the workmen's compensation act of Pennsylvania. The Pennsylvania statute provided expressly that "alien * * * parents * * * not residents of the United States shall not be entitled to any compensation." The Court affirmed the decision of the Supreme Court of Pennsylvania, 281 Penna. 227, 126 Atl. 257, which had affirmed the Superior Court of Pennsylvania, 81 Penna. Sup. Ct. 403, in its decision reversing a decision of a court of common pleas awarding compensation.

It seems unnecessary to discuss in detail the reasoning of the Court expressed in Mr. Justice Holmes' opinion. A short excerpt will suffice:

"* * * The statutes of Pennsylvania accord with this view of the Treaty. They give to alien non-resident dependent parents the same right to recover damages for death due to fault that they give to citizens and residents. Then the Compensation Act offers a plan different from the common law and the workman is free not to come in under it. If he does, of course all benefits dependent on the new arrangement are matters of agreement and statutory consequences of agreement and cannot be carried further than the contract and statute go. One of those benefits is compensation irrespective of the cause of death, but it is confined to residents."

We quite agree with this reasoning. Decedent entered into employment with the coal company and became subject to the workmen's compensation act voluntarily.

This is necessarily so because in this state workmen's compensation is not compulsory. The relation between him and his employer was purely contractual, a relationship which he elected to continue until his death several months after the effective date of the statute now being considered. Both the inhibitory provisions of the West Virginia statute and the restrictive provisions of the treaty with Italy as to civil responsibility for injuries or death are part and parcel of the contractual relation between decedent and his employer. Unless a contrary intention appears, laws subsisting at the time and place of a contract and at the place of performance form a part of the contract as fully as if incorporated in its terms. *State to use of Burt* v. *Allen,* 48 W. Va. 154, 35 S. E. 990, 50 L. R. A. 284, 86 Am. St. Rep. 29; *State* v. *Nutter,* 44 W. Va. 385, pt. 1 syl., 30 S. E. 67; *Tug River Lumber Co.* v. *Smithey,* 107 W. Va. 482, 148 S. E. 850; *Farmers and M. Bank* v. *Federal Reserve Bank,* 262 U. S. 649, 67 L. Ed. 1157, 43 Sup. Ct. 651, 30 A. L. R. 635; *Reutenik, Admr.* v. *Gibson Packing Co.,* 132 Wash. 108, 231 Pac. 773, 37 A. L. R. 830; 12 Am. Jur., Contracts, sec. 240.

Under the circumstances, plaintiffs cannot recover on the basis of the treaty with Italy. We are bound, we think, by the decision of the Court in the *Liberato* case; but whether bound or not the reasons behind this decision are so clearly sound that if there had been no *Liberato* case, we think the Italian treaty should not avail to save unto these claimants their claim.

Claimants' counsel, however, does not rely solely upon the treaty with Italy. Under what in international law is generally known as the "most-favored nation" theory, reliance is had upon The Treaty of Friendship, Commerce and Consular Rights between The United States of America and Hungary, of June 24, 1925. The provisions of this treaty as to civil liability for injuries or death are much broader than those of the treaty with Italy. In fact, as to civil responsibility for injuries or death due to negligence or fault, they are broad enough to include injuries or death without fault or negligence. This treaty, however, merits no discussion here. In the absence of a

"most-favored-nation" clause in a treaty between the government of the United States and that of another country of which an alien is a national, recourse cannot be had to treaties with third countries for the purpose of removing disability due to alienage. *Wunderle* v. *Wunderle*, 144 Ill. 40, 33 N. E. 195, 19 L. R. A. 84. Neither the treaty with Italy of 1871, nor the amendment of 1913 contains any expression which in the least would be tantamount to a "most-favored-nation" clause dealing with civil responsibility for injuries or death. In fact, this treaty contains only three such clauses: the first concerning the treatment of warships of the contracting nations; the second the disposal of real estate by nationals of the two nations; and the third concerning commerce and navigation. Not only is a "most-favored-nation" clause necessary to justify recourse to other treaties, but such a clause does not remove legal disability due to alienage, when the treaty does not expressly provide for the removal of the disability. See generally 5 Moore's Dig. International Law 272; Puente International Law (1928) 172; *Sullivan* v. *Kidd*, 254 U. S. 433, 41 Sup. Ct. 158, 65 L. Ed. 344; *Brown* v. *Daly's Estate*, 172 Iowa 379, 154 N. W. 602; *Lukich* v. *Department of Labor and Industry*, 176 Wash. 221, 29 Pac. (2d) 388; *Dobrin* v. *Mallory S. S. Co.*, (Dist. Ct., E. D. N. Y.) 298 Fed. 349. It follows that claimants can have no recourse to the treaty with Hungary and its broad provisions are of no avail here.

For the foregoing reasons we are of opinion that the workmen's compensation appeal board did not err in affirming the order of the compensation commissioner in refusing compensation, and its order is therefore affirmed.

*Affirmed.*