CHARLES WYERS, Appellant, v. GLENDY B. ARNOLD, Judge of the Probate Court of the City of St. Louis.—147 S. W. (2d) 644.

Division One, February 14, 1941.

414

*Detjen & Detjen* and *Morton K. Lange* for appellants.

*Julius T. Muench, Norman Begeman* and *George P. Mueller* for respondent.

DOUGLAS, J.—The ultimate question for decision is whether the Treaty between the United States and Germany, although containing no express provision on the point, is to be construed as superseding the statute of this State which limits the time within which a will may be admitted to probate.

The question arises in this way. In the early part of 1931 Dr. Carl Orth of St. Louis died intestate. One of Dr. Orth's heirs was his sister, Babette Orth, who resided in Germany. On October 22, 1931, and before receiving distribution from Dr. Orth's estate, Babette Orth died. It is her estate here which is involved in this case. On November 23, 1931, the probate court for the City of St. Louis appointed George Wyers, a nephew, the administrator of her estate. The only asset of her estate here was her interest in her brother's estate. In due course the estate of Dr. Orth was closed and the share of Babette Orth, amounting to some $40,000, was paid to her administrator who now holds her estate. On April 25, 1935, more than three years after this administration was begun, a copy of the will of Babette Orth, executed in Germany, was presented to the St. Louis Probate Court with a petition stating that the will was valid under the laws of Germany where it was admitted to probate and was in force and effect. The petition further prayed that the entire estate here be turned over to the persons named in the will, three nephews named Kachel, all residing in Germany, as Babette Orth's sole legatees. On January 28, 1936, more than four years after the administration was commenced, a properly authenticated copy of Babette Orth's will together with its proof in Germany was admitted to probate by respondent probate judge.

Thereupon plaintiff, a nephew and heir at law of Babette Orth, but cut out by the will, applied to the St. Louis Circuit Court for a writ

of prohibition against the probate judge to prevent him from proceeding under the will, and distributing the estate according to its terms on the ground the probate court had no authority to admit such will to probate because of Section 532, Revised Statutes 1939, Mo. Stat. Ann., sec. 531, p. 324, which bars the probate of a will after the lapse of one year from the date of the first publication of the notice of the granting of letters testamentary on the estate of the testator. The respondent set out in his return that the will was valid under the laws of Germany and consequently was valid for the purpose of passing title to any personalty of the testatrix located in this country; that by the terms of the will the nephews Kachel were entitled to her estate; and that he was bound by the Treaty with Germany to admit the will to probate and was therefore acting within his jurisdiction. The circuit court denied the application for the writ and plaintiff has appealed. No contention has been made about the statute being inapplicable except for the Treaty.

At the outset it is important to bear in mind the character of this proceeding which raises only the question of the jurisdiction of the probate court in the premise. While our decision may, incidentally, dispose of the controversy between the heirs, that is, should the nephews Kachel of Germany receive the entire estate as sole legatees under the will, or should they share the estate with the nephews Wyers, residing here, and others of the half blood residing in Germany, under the intestacy laws of Germany; still we are not primarily concerned with these conflicting claims to ownership of the assets of the estate. Some of the cases cited to us are equitable proceedings to adjudge conflicting claims of a somewhat similar nature and cover a wide and inviting field; but this proceeding is confined within the narrow channels which restrict the office of the writ of prohibition as developed from the common law. Our decisions indicate that we regard the remedy by prohibition as preventive, not as corrective. [State ex rel. McNamee v. Stobie, 194 Mo. 14, 92 S. W. 191.]

State laws, of course, must yield to valid treaties where there is conflict between them. Article VI, Section 2 of the Federal Constitution declares that all treaties made under the authority of the United States shall be the supreme law of the land. Even laws governing essentially local matters must bow when treaty provisions override them. Santovincenzo v. Egan, 284 U. S. 30, has held that the disposition of the property of aliens dying within the territory of the respective parties, is within the scope of the treaty-making power, and any conflicting law of the State must yield. This case is looked upon as setting at rest any conflict of decision whether the treaty-making power could constitutionally supplant or qualify the State laws regulating the administration of estates. [Lely v. Kalingoglu, 64 App. D. C. 213, 76 Fed. (2d) 983.] In United States v. Belmont,

301 U. S. 324, the court declared the external powers of the United States are to be exercised without regard to State laws or policies and State constitutions, laws and policies cannot be interposed as an obstacle to the effective operation of such powers.

The Virginia Statute of Limitations was held to be suspended by the Treaty of Peace with his Brittanic Majesty in 1782, but there the treaty specifically ordained that a creditor should meet ''with no lawful impediment to the recovery of the full value, in sterling money, of all *bona fide* debts heretofore contracted.'' The Statute of Limitations was directly in conflict with this provision and for that reason could not be interposed as a defense to the debt. [Hopkirk v. Bell, 3 Cranch, 454, 2 L. Ed. 497.]

It appears to be the declared policy of Missouri to recognize, as it must, the supremacy of valid treaties. We find this in the statute prohibiting aliens from acquiring land by purchase (although they may lawfully acquire it by devise or descent). There it is stated that ''the prohibition of this section shall not apply to cases in which the right to hold or dispose of lands in the United States is secured by existing treaties to the citizens or subjects of foreign countries.'' [Sec. 15230, R. S. 1939, Mo. Stat. Ann., sec. 14013, p. 549.]

Turning now to the Treaty with Germany of October 14, 1925 (44 Stats.-at-large, Vol. 3, p. 2132) we find the provision relied upon by respondent under Article IV. It follows: ''Nationals of either High Contracting Party may have full power to dispose of their personal property of every kind within the territories of the other, by testament, donation, or otherwise, and their heirs, legatees and donees, of whatsoever nationality, whether resident or non-resident, shall succeed to such personal property, and may take possession thereof, either by themselves or by others acting for them, and retain or dispose of the same at their pleasure subject to the payment of such duties or charges only as the nationals of the High Contracting Party within whose territories such property may be or belong shall be liable to pay in like cases.''

The laws of this State permitting the right of disposal of the personal estate of a foreigner are in harmony with this provision. [See Section 253, R. S. 1939, Mo. Stat. Ann., sec. 254, p. 164.]

Now, may it be said that the *full* power of disposition of personal property by testament as guaranteed by the treaty is improperly denied by our statute which limits the time within which probate may be had?

Respondent concedes the will was not presented to him within the time required by the statute but he defends his action in admitting the will to probate on the ground the statute does not apply to a German citizen because of the treaty. He argues that ''full power'' to dispose of property by testament includes the ''full power'' to probate the testament and the statute in question restricts or limits

such grant of full power by the treaty and therefore the statute may not be heeded.

Much stress is laid on the statement of Chief Justice HUGHES in the case of Santovincenzo v. Egan, supra, where he discusses the Treaty with Persia and observes that there was omitted from that treaty such qualifying phrases as "conformably with the laws of the country" or "so far as the laws of each country will permit. . . . The omission . . . of a clause of this sort" he says, "must be regarded as deliberate." With this conclusion we fully agree and find it essentially applicable to this case. The purpose of the provision under consideration was to insure the right of disposition of personal property *despite* any local law to the contrary and had such a phrase been included in the treaty such right would have been expressly subject to denial by the laws of either country and the treaty provision would be meaningless.

In determining this case we must adhere to the principle that generally treaties are to be liberally construed and their words are to be taken in their ordinary meaning and not in any special or restricted sense. All provisions of the treaty relevant to the inquiry are to be considered. Even so, treaties will be construed, wherever reasonably possible, so as not to override State laws or to impair rights arising under them. [Guaranty Trust Co. v. United States, 304 U. S. 126.]

In granting the power to dispose of personal property by testament certain considerations must necessarily have been within the contemplation of the parties to the treaty because of the use of the word "testament." According to some authorities a testament, in its strict sense, is a will of personal property. In the first place the right to dispose of or take property under a will is not a natural right but is a purely statutory one. It is subject to the regulation and control of the sovereign power. The property involved may be and often is, as here, subject to the control of a power foreign to the one which controls the will. For an instrument to constitute a will or testament it must be drawn and executed in conformity with legal requirements. A testament must be probated to give it life and force. The probate of a will is a judicial act. An ancillary probate of an authenticated copy of a will is likewise a judicial act. [Stevens v. Oliver, 200 Mo. 492, 98 S. W. 492.] In order to probate a will resort must be had to a tribunal authorized for that purpose. After probate, the administration of an estate under a will becomes a judicial proceeding. All of these well-understood fundamental processes are necessarily associated with and carry into operation the power of disposal by testament and all are regulated by statute law.

Can we then say that a local law tending toward the orderly administration of estates which applies alike to citizen and foreigner is an unwarranted restriction of this power to dispose by testament?

The answer must be in the negative because the treaty itself provides for submission to local laws in the courts of the respective countries. Article I, among other matters, states that ''the nationals of each High Contracting Party shall enjoy freedom of access to the courts of justice of the other *on conforming to the local laws,* as well for the prosecution as for the defense of their rights, and in all degrees of jurisdiction established by law.'' (Our italics.) It has been held that even a foreign sovereign seeking a remedy in a court of this country is subject to the limitation statutes of the forum. [Guaranty Trust Co. v. United States, supra.]

Certain rights are conferred by the treaty upon consular officers in relation to estates if under the local laws such an officer is eligible to exercise them. Article XXIV authorizes a consular officer to take charge of and protect the property of a deceased national pending the appointment of an administrator if the local laws permit. Furthermore, a consular officer may be appointed administrator if qualified according to the local laws. Should he accept such an appointment ''he subjects himself as such to the jurisdiction of the tribunal or other agency making the appointment for all necessary purposes to the same extent as a national of the country where he was appointed.''

We believe the provision for notice in the same section of the treaty is of importance in sustaining our view that the submission to local laws of procedure was contemplated. The treaty provides when a national dies in a foreign territory without having in the territory of his decease any known heirs or testamentary executors the consular officer shall be notified ''in order that necessary information may be forwarded to the parties interested.''

In the present case, who is to determine how long administration should be prolonged awaiting the possibility that at some time in the future a foreign will might be presented for probate? No duty of searching in a foreign jurisdiction for a possible will is placed upon anyone either by the treaty or by statute. If the local laws for orderly administration were not observed, confusion would ensue. One of the objects of administration is an orderly settlement of the deceased's affairs and the protection and lawful distribution of his property within a reasonable length of time.

The case of Todok v. Union State Bank, 281 U.,S. 449, 74 L. Ed. 956 is apposite. The controversy there was whether the Treaty with Sweden and Norway providing that nationals ''may freely dispose of their goods and effects'' superseded the law of Nebraska which required a wife to join with her husband where the homestead was conveyed. It is argued that the local law could not be applied where a husband, a citizen of Norway, conveyed a Nebraska homestead by his sole deed because such local law constituted an unlawful limitation on his right of free disposal saved to him by the treaty. The court first observed that to sustain this argument would place an alien

owner of a homestead in Nebraska on a better footing than that of a citizen of the State, which would be repugnant to the purpose of the treaty. Construing the treaty, the court said: "It is not to be supposed that the treaty intended to secure the right of disposition in any manner whatever regardless of reasonable regulations in accordance with the property law of the country of location, bearing upon aliens and citizens alike. For example, conveyance of land would still be subject to nondiscriminatory provisions as to form or recording. Nor can the right to 'dispose,' secured by the treaty, be deemed to give a wholly unrestricted right to the alien to acquire property, without regard to reasonable requirements relating to particular kinds of property and imposed upon both aliens and citizens without discrimination."

On the question before us a New York Surrogate said: "Even where movable property passes according (to) the law of the foreign domicile of its some time owner, all the procedure for taking it into legal possession here for the purpose of surrendering it for transmission abroad, after local claims thereon have been satisfied, is the procedure of the local tribunal, modelled after that followed in merely domestic cases." [In re Hanson's Estate, 281 N. Y. Supp. 617.]

We conclude that our statute limiting the time for the probate of a will, a reasonable rule which does not discriminate between residents and nonresidents, does not conflict with the Treaty with Germany. It does not unlawfully limit or restrict the freedom of disposal by testament. Consequently, it is not superseded by the treaty.

The statute is mandatory on respondent and in proceeding contrary to its express prohibition he acted without authority and in excess of his jurisdiction.

We need not consider other matters raised in the arguments.

The judgment is reversed and the cause remanded with directions to make the writ of prohibition absolute. All concur.