ANNA ANTOSZ (JANTOSZ)

*v.*

STATE COMPENSATION COMMISSIONER, *et al.*

(No. 9935)

Submitted May 13, 1947. Decided June 10, 1947.

*H. D. Rollins* and *Francis N. Bangs,* for appellant.

*Shattuck, Bangs & Davis,* for Embassy of Poland in Washington.

*Ira J. Partlow,* Attorney General, and *W. Bryan Spillers,* Assistant Attorney General, for appellee.

*Jackson, Kelly, Morrison & Moxley, (amicus curiae.)*

RILEY, JUDGE:

Anna Antosz (Jantosz) appeals from an order of the workmen's compensation appeal board, affirming a ruling of the state compensation commissioner, denying her claim for compensation for the death of her husband, Stanley Antosz (Jantosz) on the ground that she was a

nonresident alien at the time of the injury resulting in the death of her husband.

Decedent, a Polish national, lost his life on January 4, 1946, while working for Kingston-Pocahontas Coal Company in McDowell County. Claimant at that time was, and still is, residing in Poland, and like her husband is a Polish national. At the hearing before the commissioner, held on September 5, 1946, the current treaty between the Republic of Poland and the United States of America, ratified by the United States Senate on April 5, 1932, and proclaimed by the President of United States on July 10, 1933, was made a part of the record, and the commissioner was requested to take notice of the second paragraph of Article VI of the Constitution of the United States. Also an authenticated transcript in Polish from the Journal of Laws of the Republic of Poland, issue No. 75 of July 22, 1927, Item 573, page 582, together with an authenticated translation of these laws, duly certified by the Consulate General of the Republic in New York, was tendered on behalf of claimant, and admitted in evidence.

Articles II and XXIII of the treaty read:

### "ARTICLE II

"With respect to that form of protection granted by National, State, or Provincial laws establishing civil liability for injuries or for death, and giving to relatives or heirs or dependents of an injured party a right of action or a pecuniary benefit, such relatives or heirs or dependents of the injured party, himself a national of either of the High Contracting Parties and injured within any of the territories of the other, shall, regardless of their alienage or residence outside of the territory where the injury occurred, enjoy the same rights and privileges as are or may be granted to nationals, and under like conditions."

### "ARTICLE XXIII

"A consular officer of either High Contracting Party may, if this is not contrary to the local law, appear personally or by delegate on behalf of

nonresident beneficiaries, nationals of the country represented by him before the proper authorities administering workmen's compensation laws and other like statutes, with the same effect as if he held the power of attorney of such beneficiaries to represent them unless such beneficiaries have themselves appeared either in person or by duly authorized representative.

"Written notice of the death of their countrymen entitled to benefit by such laws should, whenever practicable, be given by the authorities administering the law to the appropriate consular officer of the country of which the deceased was a national.

"A consular officer of either High Contracting Party may on behalf of his non-resident countrymen collect and receipt for their distributive shares derived from estates in process of probate or accruing under the provisions of so-called workmen's compensation laws or other like statutes provided he remits any funds so received through the appropriate agencies of his Government to the proper distributees."

The pertinent provision of the Constitution of the United States (second paragraph of Article VI) reads: "This Constitution and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."

The commissioner and the appeal board refused the claim on the basis that claimant was precluded under the provisions of Section 15 (a) Article 4, Chapter 131, Acts of the West Virginia Legislature, 1945, which reads:

"NONRESIDENT ALIEN BENEFICIARIES.— Notwithstanding any other provisions of this chapter, no benefits under any such provisions and no commutation of periodical benefits under the provisions of section seventeen of this

article shall be made to nonresident alien beneficiaries on account of any injury sustained after March eleventh, one thousand nine hundred thirty-nine. Nonresident alien beneficiaries within the meaning hereof shall mean persons not citizens of the United States residing outside of the territorial limits of the United States at the time of the injury with respect to which benefits would otherwise have been payable to them in the absence of such nonresident alienage. In case of nonresident alien beneficiaries entitled under prior law to benefits on account of accidents occurring prior to March eleventh, one thousand nine hundred thirty-nine, the commissioner in his discretion may make, and such beneficiary shall be required to accept, commutation of such benefits into a lump sum settlement and payment at the rate of one-half of like benefits to resident beneficiaries."

In support of the claim it is contended that the treaty between the United States of America and Poland, under the second paragraph of Article VI of the Constitution of the United States, is the supreme law of the land, is inconsistent with Section 15 (a), Chapter 131, Acts of the West Virginia Legislature, 1945, and therefore prevails over said statute. In furtherance of the position claimant asserts: (1) that the treaty should be liberally and fairly construed and interpreted according to the intention of the high contracting parties thereto; (2) that the instant claim is a "civil liability" and the compensation benefits which she seeks are "a pecuniary benefit" within the meaning of the treaty, and, therefore, the claim is not barred by Section 15 (a) of the West Virginia statute.

On the other hand appellees and the West Virginia Coal Association as *amicus curiae* contend (1) that the treaty is not broad enough to protect claimant; and (2) that the cases of *Micaz v. State Compensation Commissioner*, 123 W. Va. 14, 13 S. E. 2d 161, and *Liberato v. Royer*, 270 U. S. 535, 46 S. Ct. 373, 70 L. ed. 719, sustain appellees' position.

It is well at this time to restate some of the cardinal rules which govern the interpretation of treaties. The

primary rule is that the treaty shall be liberally construed, so as to carry out the intention and purpose of the contracting parties thereto, and to secure equality between them. *United States* v. *Pink,* 315 U. S. 203, 86 L. ed. 796, 62 S. Ct. 552; *Bacardi Corporation* v. *Domenech,* 311 U. S. 150, 85 L. ed. 98, 61 S. Ct. 219; *Hauenstein* v. *Lynham,* 100 U. S. 483, 25 L. ed. 628, reversing *Hauenstein* v. *Lynham,* 28 Gratt (69 Va.) 62. But such construction should not be extended so as to infringe upon the Constitution of the United States, or to invade the province of the States of the Union in matters inherently local, or to restrict the various states in the exercise of their sovereign powers. *Ware* v. *Hylton,* 3 Dall. (U. S.) 199, 1 L. ed. 568. See generally 52 Am. Jur., Subject "Treaties," Section 34, and *Wyers* v. *Arnold,* 347 Mo. 413, 147 S. W. 2d 644, 134 A. L. R. 876, note 882 to 886, inclusive.

As heretofore suggested, the question involved on this appeal is whether Section 15 (a), Chapter 131, Acts of the Legislature, 1945, denying compensation under the workmen's compensation statute to nonresident alien beneficiaries is unconstitutional under the second paragraph of Article VI of the Constitution of the United States which provides, among other things, that "all Treaties made, or which shall be made under the Authority of the United States, shall be the supreme Law of the Land", as being violative of the treaty between the United States of America and the Republic of Poland. In the recent case of *Micaz* v. *State Compensation Commissioner,* 123 W. Va. 14, 13 S. E. 2d 161, this Court, following the case of *Liberato* v. *Royer,* 270 U. S. 535, 70 L. ed. 719, 46 S. Ct. 337, in appraising Article III of the treaty of 1871 between the United States and Italy (17 Stat. 846), as amended in 1913 (38 Stat. 1669-1670), held that the treaty did not render the statute unconstitutional as applied to the case of nonresident Italian national beneficiaries. It is to be noted, however, that unlike the Polish treaty, the Italian treaty simply established "a civil responsibility for injuries or for death caused by *negligence or fault* and gives to relatives or heirs of the injured [or deceased] party

*a right of action"* (italics supplied), whereas the Polish treaty establishes a "civil liability for injuries or for death, and giving to relatives or heirs or dependents of an injured party *a right of action or a pecuniary benefit"* (italics supplied) without regard to fault or negligence. In opposition to this position counsel for the employer, relying in part upon the language used in the *Micaz* and *Liberato* cases contends that the Polish treaty is inapplicable because whatever right claimant had under the workmen's compensation act was not "[a] form of protection granted by National, State, or Provincial laws", but is the result of the voluntary contract which decedent entered into when he became, as he was not compelled to do, an employee of a subscriber to the workmen's compensation fund. It is, of course, true, as this Court has said in the *Micaz* case, that the relationship of decedent in this case to his employer became and at the time of his death was contractual in its nature. But it is equally true that decedent, having entered into a voluntary arrangement, acquired a status which subjected him to, and gave him rights under the provisions of the workmen's compensation act, and, in our opinion, the rights which claimant acquired under that act were "granted" by the State of West Virginia within the meaning of the Polish treaty.

But counsel claims that the words contained in the treaty "establishing civil liability for injuries or for death, and giving to relatives or heirs or dependents of an injured party a right of action or a pecuniary benefit" are not sufficiently broad to cover a claim for compensation under the workmen's compensation law. In this regard we note again the difference between the two treaties. The Italian treaty provided merely for "a civil responsibility for injuries or for death caused by negligence or fault and gives to relatives or heirs of the injured party a right of action," whereas the instant treaty establishes a "civil liability for injuries or for death, and giving to relatives or heirs or dependents of an injured party a right of action or a pecuniary benefit." The right

of action provided in the Italian treaty is tantamount to an action of trespass on the case. But in addition to such a right the instant treaty in the alternate gives to the nationals of the contracting parties "a pecuniary benefit."

The use of the disjunctive "or" between the words "a right of action" and "a pecuniary benefit" persuades us that the contracting parties had in mind two separate forms of relief, that is, in the case of death or injury due to fault or negligence, a right of action in a court of law, and, in the case of death or injury without regard to fault or negligence, benefits under the workmen's compensation statutes. Our position in this regard is strengthened by an examination of Article XXIII of the treaty, which provides that the consular officer of either of the parties may, if not contrary to the local law, represent "non-resident beneficiaries, nationals of the country represented by him before the proper authorities administering workmen's compensation laws and other like statutes." And the fact that the treaty purports to establish a "civil liability" does not serve to alter our position. As suggested by counsel for claimant, a claim for death under the workmen's compensation statute has at least some of the earmarks of a civil liability: (1) All claims are paid from levies on subscribers and thus the burden of payment falls upon them; and (2) the levies of a subscriber are determined by the number of cases of death or injury reported. So we are of the opinion that Section 15 (a), Chapter 131, Acts, 1945, under which it is sought to bar the instant claim, is invalid as violative of the treaty under consideration; and the statute being invalid, the position of counsel for employer that decedent waived all claims for benefits to himself and his family by entering into a contract of employment is untenable. A waiver cannot be based upon an invalid statute.

But it may be said that Section 15 (a) is underlaid by a public policy that funds contributed by West Virginia subscribers should not be sent to aliens residing in foreign countries. Likewise the treaty has underlying it a sound

public policy. At times, when labor is abundant, American employers might be prevented from employing American workmen in dangerous occupations, if, by employing aliens having nonresident alien beneficiaries, they are safeguarded against the payment of benefits to nonresident widows and dependents of such aliens, in case of death or injury, which in every case in which death of, or injury to, an American workman occurred in the course of and resulting from his employment, would be payable, and thus in such times of abundant labor there would be discrimination against American labor.

We reverse the orders of the workmen's compensation appeal board and the state compensation commissioner and remand this cause to the commissioner for further proceedings consistent with the principles herein set forth.

*Reversed and remanded.*