## Giovannetti v. Conte Equipment Company

Before McBride, Beck and Hester, JJ.

*Irwin M. Ringold,* for appellant.

*John F. Will, Jr.,* for appellee.

HESTER, J., November 9, 1960.—This is an appeal by the widow of Fausto Giovannetti, from the decision of the Workmen's Compensation Board reversing the award of the referee granting her compensation although she is an Italian citizen now living in Italy.

The facts in the case were agreed upon by stipulation. No testimony was taken. Decedent, Fausto Giovannetti, was an employe of defendant, the Conte Equipment Company, and was killed in the course of his employment on March 5, 1956. At the time of his death, his widow, Mercedes Giovannetti, was a citizen of Italy but resided in the United States with her husband. Decedent had two children, Roberto Giovannetti and Fausto Linn Giovannetti, both of whom are citizens of the United States by birth. An award was made by Referee McGovern on August 15, 1956, awarding compensation to the widow and the two children, said compensation being in the amount of $29.50 a week. On November 11, 1956, Mercedes Giovannetti returned to Italy with her two children and has resided there

since that date. On November 2, 1956, a petition for modification was filed by defendant, and, following a hearing thereon, the award of the referee was in favor of the said Mercedes Giovannetti. On March 26, 1958, defendant appealed said award to the board. On April 8, 1959, the award was disallowed. Thereafter, an appeal was taken to this court by the said Mercedes Giovannetti.

While the Workmen's Compensation Board is the ultimate arbiter of facts and its findings are binding on appeal if supported by competent evidence, the appellate court may review questions of law, including whether the law has been properly applied to the facts: Ede v. Ruhe Motor Corporation, 184 Pa. Superior Ct. 603, 136 A. 2d 151. If the facts permit of but one legitimate inference, the question becomes one of law: Rybitski v. Lebowitz, 175 Pa. Superior Ct. 265, 104 A. 2d 161; Weiss v. Friedman's Hotel, 176 Pa. Superior Ct. 98, 106 A. 2d 867; Giallonardo v. St. Joseph's College, 177 Pa. Superior Ct. 87, 111 A. 2d 178.

Claimant questions the board's findings of fact and conclusions of law, particularly conclusion of law no. 1, which holds as follows:

1. "Since the widow of the decedent removed from the United States to her native Italy, on November 11, 1956, she is not entitled to compensation benefits so long as she remains a non-resident of the United States."

Defendant contends, and is supported by the decision of the board, that section 310 of The Pennsylvania Workmen's Compensation Act precludes a nonresident alien dependent from obtaining compensation. Claimant widow contends that section 310 of The Workmen's Compensation Act has been invalidated by the Italian-American Treaty of 1949, and she is, therefore, entitled to compensation as a dependent within the meaning of the compensation act.

The question before this court is, therefore, whether the Workmen's Compensation Board committed an error of law in reversing the award of the referee, thereby denying the widow of Fausto Giovannetti compensation.

Section 310 of The Pennsylvania Workmen's Compensation Act of June 21, 1939, P. L. 520, the applicable section in force at the time of Fausto Giovannetti's death, reads as follows:

"Alien widows, children, widowers, parents, brothers, and sisters, not residents of the United States, shall not be entitled to any compensation."

The parties, as well as the board, considered at some length whether or not the removal from this country by an alien resident dependent to her native land was such a change of status as to bring her within the meaning of "alien widows" under section 310 aforesaid. We believe that this section of the act has been clearly interpreted by our appellate courts to mean that removal does cause a change in status which will result in denial of compensation unless some other consideration prevents it: Lubanski v. Delaware, Lackawanna & Western Railroad Company, 81 Pa. Superior Ct. 538.

Our whole consideration, therefore, is whether or not the Italian-American Treaty of Friendship, Commerce, and Navigation, ratified in 1949, invalidates section 310 of the Pennsylvania Workmen's Compensation Act, by virtue of the Supremacy Clause of the United States Constitution.

The pertinent section reads as follows:

"The nationals of either High Contracting Party, regardless of alienage or place of residence, shall be accorded rights and privileges no less favorable than those accorded to the nationals of the other High Contracting Party, under laws and regulations within the

territories of such other High Contracting Party that (a) . . . (b) grant to a wage earner or an individual receiving salary, commission or other remuneration, or to his relatives, heirs or dependents, as the case may be, a right of action, or a pecuniary compensation or other benefit or service, on account of occupational disease, injury or death arising out of and in the course of employment or due to the nature of employment": 63 Stat. 2255, article XII, subdivision 1.

We are of the opinion that the clear, express meaning of this section requires this court to find that section 310 of The Pennsylvania Workmen's Compensation Act has been invalidated and that claimant widow is entitled to compensation.

Defendant and the board contend that our appellate courts and the Supreme Court of the United States have interpreted this treaty in relation to the alien discrimination clause, and determined that there is no incompatibility between the two and that section 310 may be applied without conflict with the treaty or the Constitution. We believe this to be error. There has been no Pennsylvania appellate court nor United States Supreme Court decision which applied to this treaty. Both defendant and the board rely upon Liberato v. Royer, 270 U. S. 535 (1926), and Frasca v. City Coal Co., 97 Conn. 212, 116 Atl. 189, which were concerned with the previous Italian-American Treaty. In the Liberato case, there was a sound basis for finding that section 310 of the compensation law was not in conflict with the Italian-American Treaty in force at that time. Said treaty made no mention of favored treatment in relation to compensation benefits. The appropriate section of that treaty reads as follows:

"Article I—The Citizens of each of the High Contracting Parties shall receive in the States and Territories of the other the most constant security and protection for their persons and property and for their

rights, including that form of protection granted by any state or national law which establishes a civil responsibility for injuries or for death caused by negligence or fault and gives to relatives or heirs of the injured party a right of action, which right shall not be restricted on account of the nationality of said relatives or heirs; and shall enjoy in this respect the same rights and privileges as are or shall be granted to nationals, provided that they submit themselves to the conditions imposed on the latter": 38 Stat. 1669, 1670.

Clearly, this section of the prior treaty contemplated only legal liability, dependent upon negligence and fault, with the right of action flowing therefrom, with no consideration given to liability without fault imposed by the compensation laws. Further, no mention is made in the earlier treaty of dependents or rights of aliens regardless of residence, and only by a strained construction could the courts have found other than against the alien nonresident dependent.

In the Frasca v. City Coal Co. case, supra, the court relied upon the fact that the treaty restricted rights of recovery to relatives and heirs, which are not necessarily dependents and, therefore, the treaty had in mind kinship and not dependency. The court therein also held that the treaty considered civil liability and negligence and not liability without fault.

The 1949 treaty which is now before us specifically corrects these aspects of the earlier treaty. Under this treaty, the benefits apply to aliens of Italian nationality *"regardless of residence"* which means Italians residing in Italy as well as those residing in America, so long as they are dependents in status. Also, in the Connecticut case, Frasca v. City Coal Co., supra, the court found that the treaty changed the previous law, thereby permitting nonresident aliens to sue in civil actions based on negligence. There can be no reason

why the courts may not find that the present treaty changed the previous law and permit nonresident alien dependents to collect compensation. It appears that the treaty of 1949 was amended to cover specific limitations under the older treaty outlined in the Liberato and Frasca cases. See the Effect of Federal Treaties on State Workmen's Compensation Laws; James H. Daffer, 107 U. of Pa. Law Rev. 363.

Defendant maintains that the Treaty of 1949 is merely one of navigation and commerce. This position cannot be maintained in the face of the title of the treaty and statement of purpose detailed in the foreword. The word "Friendship" appears in the title and in the foreword the intent is stated:

". . . The United States of America and The Italian Republic, desirous of strengthening the bond of Peace and the traditional ties of friendship between the two countries and of promoting closer intercourse between their respective territories through provisions responsive to the *spiritual, cultural,* economic and commercial aspirations of their peoples . . ."

Article I, par. 1 reads:

"The nationals of either High Contracting Party shall be permitted to enter the territories of the other High Contracting Party, and shall be permitted freely to reside and travel therein."

Other articles provide for freedom of religion, press, burial, civil action and participation in compulsory insurance. The treaty appears to encompass most of the conceivable relationships between the nationals of the two countries, and its basis appears to be social welfare as well as commerce and navigation, and there appears to be no requirement that the nationals of either country enter or reside in the other country only for the purpose of commerce and navigation.

Defendant also alleges that enforcing the treaty and invalidating the State statute is an infringement upon

the police powers of the Commonwealth of Pennsylvania. We do not subscribe to this allegation. The regulation and treatment of aliens is an area which requires uniformity throughout the country. It involves our relationship, as a nation, with other nations. The treaty does not concern itself with the compensation laws as such, but only with the treatment of aliens. When the compensation laws are in derogation of the national policy in relation to aliens, they infringe upon Federal powers as derived from the States by virtue of the Constitution. The Federal government has traditionally guaranteed and protected the rights of aliens.

In the case of Iannone v. Radory Construction Corp., 141 N. Y. S. 2d 311, which was sustained in the New York Court of Appeals, the court found that a similar discriminatory clause in the compensation law of the State of New York was unconstitutional by virtue of the 1949 Italian-American Treaty. The court held that the treaty section was applicable and a nonresident alien dependent was given less favorable treatment then accorded our own citizens when payment was decreased to the alien over that given to residents. The court stated (page 315) :

"The Constitution provides that a duly ratified treaty made by the United States 'shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding' ". U. S. Constitution art. VI, §2. In Asakura v. City of Seattle, 265 U. S. 332, 341, 44 S. Ct. 515, 516, 68 L. Ed. 1041, Mr. Justice Butler said of the treatymaking power of The United States 'though it does not extend "so far as to authorize what the Constitution forbids," it does extend to all proper subjects of negotiation between our government and other nations. . . .' The provision of the Treaty previously set forth contains

subject matter proper for negotiation between sovereign governments and, as the Treaty is self-executing, it operates without need of any legislation. Hence, it must be applied and given authoritative effect by the Courts of this State. . . .

"In the circumstances of this case, section 17 of The Workmen's Compensation Law is inconsistent with the Treaty and must give way to superior national policy."

Defendants contend the treaty is not applicable in Pennsylvania despite the Iannone decision, as New York compensation law is compulsory upon employer and employe, whereas in Pennsylvaina its acceptance is voluntary. In the Iannone case, no distinction was made between compulsory and noncompulsory compensation laws, despite the fact that the New York law is both compulsory and voluntary, depending upon whether or not a specific occupation is hazardous or nonhazardous. Be that as it may, in the well-reasoned opinion in Antosz v. Compensation Commissioner, 130 W. Va. 260, 43 S. E. 2d 397, ruling on a voluntary compensation agreement with similar discriminatory provisions, it was held that a similar Polish-American Treaty invalidated the West Virginia provision and required payment of compensation to nonalien dependents. The Liberato case was therein considered and distinguished and, likewise, a West Virginia Supreme Court decision (Micaz v. State Compensation Commissioner, 123 W. Va. 14) which followed the Liberato case and construed the earlier Italian-American Treaty.

There is sound public policy for the holding in favor of the supremacy of the treaty as stated in Antosz v. Compensation Commissioner, supra:

"At times, when labor is abundant, American employers might be prevented from employing American

Workers in dangerous occupations, if, by employing aliens having nonresident alien beneficiaries, they are safeguarded against the payment of benefits to nonresident widows and dependents of such aliens, in case of death or injury, . . . and thus in such times of abundant labor there would be discrimination against American labor, 130 W. Va. 260, pp. 267-268."

While in Pennsylvania and West Virginia the arrangement is voluntary and contractual, and treaties generally do not invade contractual areas, decedent here acquired a status which subjected him to obligations and gave *his dependents* certain vested rights under the provisions of The Workmen's Compensation Act. This status and these *rights* were granted by the State of Pennsylvania within the meaning of the Italian-American Treaty:

"Grant to a wage earner or an individual receiving salary . . . or to his relatives, heirs or dependents, as the case may be, a right of action or a pecuniary compensation . . . on account of occupational disease, injury or death arising out of and in the course of employment. . . .": Article XII supra.

Since this is a pecuniary compensation granted by virtue of a legislative enactment, the contractual relationship is of no significance as the terms of the contract are determined by statute. The statute was superseded by the constitutional requirement of the supremacy of treaties, which thereby invalidated section 310 of the compensation act, as the same applies to the within fact situation. Because section 310 was invalidated, there can be no question of a waiver by application of an invalid or illegal contractual term.

Treaties shall be liberally construed so as to carry out the intention and purpose of the contracting parties thereto and to secure equality between them: United States v. Pink, 315 U. S. 203, 86 L. Ed. 796, 62

S. Ct. 552; Bacardi Corporation of America v. Dome-
nech 311 U. S. 150, 85 L. Ed. 98, 61 S. Ct. 219; Hauen-
stein v. Lynham, 100 U. S. 483, 25 L. Ed. 628. The
intention of the government can be gauged by the
very words of the treaty, as well as by the statements
of representatives of the government. Mr. William
Connolly, Director of the Bureau of Labor Standards
in 1949, shorty after passage of the Italian Treaty, at
the request of the State Department, addressed the
International Association of Industrial Accident
Boards and Commissioners on the subject of the treaty.
He stated:

"The question again arises, therefore, as to how
these treaties, which are considered to be the supreme
law of the land, affect the payment of Workmen's
Compensation benefits to alien workers. . . . The pro-
vision in the treaty with Italy represents a clarifica-
tion of the provision which appears in the older treaties
(and while the Supreme Court has not decided the
scope of the Italian provision, the West Virginia
Supreme Court, has, for a similar provision in Antosz
Case). In view of this court decision, it may be ad-
visable for those states with special provisions in re-
spect to payment of benefits to non-resident alien
dependents to review and study the effect of these
treaties on such provisions. . . .": Proceedings of the
Thirty-Fifth Annual Convention of the International
Association of Industrial Accident Boards and Com-
missioners, 119 Dept. Lab. Bull. 80, (1949).

The address appears to bear out the intention of the
intention of the State Department to continue to im-
plement the ideals of the model provision of the 1923
German Treaty, which attempted to guarantee alien
workmen, workmen's benefits equal to Americans.

In the introduction to the article in 107 U. of Pa.
Law Rev. 363, supra, it is stated:

"Thirty-one American Jurisdictions discriminate against non resident alien dependents in their Workmen's Compensation laws. Yet the federal government has apparently obligated itself by treaty to assure non discriminatory treatment for nationals of contracting countries. While it seems clear under the supremacy clause of the Federal Constitution that inconsistent state legislation cannot stand, courts, both state and federal have demonstrated a reluctance to construe treaty provisions in a way which would bring them into conflict with state laws."

At page 368 of this article, the writer, Mr. Daffer, states:

"Iannone represents the culmination of more than half a century of struggle by non resident Italian dependents to obtain equal compensation by treaty."

In view of the authority above reviewed and cited, and for the reasons given, there being no opposing authoritative interpretation of the effect of the present treaty, we feel compelled to find that the board committed an error in law in reversing the award by the referee.

### Order of Court

And now, to wit, November 9, 1960, the exceptions of the within claimant to the decision of the Workmen's Compensation Board having come before the court en banc for argument, and following a stipulation as to the facts involved therein; following argument thereon and a comprehensive study of briefs submitted by counsel for the parties hereto, upon consideration thereof, it is hereby ordered and decreed that the order of the Workmen's Compensation Board dated February 21, 1959, concluding that the said Mercedes Giovannetti, the within claimant, was no longer entitled to compensation following her removal to Italy on November 11, 1956, be and the same is

hereby reversed, and it is further ordered and decreed that the order of Referee McGovern, dated March 4, 1958, directing that compensation payments be made to said claimant, be and the same is hereby reinstated with interest thereon to the date of payment.