[Civil No. 4464. Filed February 9, 1942.]

[121 Pac. (2d) 879.)

HARRY HERSHKOWITZ and JESUS GALLEGO HERSHKOWITZ, Petitioners, v. ARIZONA HIGHWAY DEPARTMENT and THE INDUSTRIAL COMMISSION OF ARIZONA, Respondents.

Mr. Lemuel P. Mathews, for Petitioners.

Mr. Rouland W. Hill and Mr. Howard A. Twitty, for Respondents.

LOCKWOOD, C. J.—On May 22, 1940, Adolph Hershkowitz was killed by an accident arising out of and in the course of his employment with the Ari-

zona State Highway Department. A claim for dependents' allowance was filed by his parents, Harry Hershkowitz and Jesus Gallego Hershkowitz, petitioners, and the Industrial Commission made an award finding that the average monthly wage of Adolph at the time of his death was $50, and that petitioners were entitled to compensation as partially dependent parents. A motion for rehearing was filed more than twenty days after the award, and the commission refused to grant it on the ground that the time allowed by statute had elapsed. The case was brought before us on *certiorari* and we held that the commission correctly refused to grant a rehearing, but that petitioners were permitted to appeal to this court. *Hershkowitz* v. *Arizona Highway Department*, 56 Ariz. 494, 109 Pac. (2d) 46, 47, We said:

" . . . This, however, does not deny to petitioners their right to a writ of *certiorari* to review the award as made. Sec. 56–972, Arizona Code 1939. It limits them, however, to the question as to whether the record made on the original award sustains it, and does not permit them to make the objection that they were not given an opportunity to present such other and further evidence on the question as they might desire, a right which they would have had if the application for the rehearing had been timely."

On an examination of the record it appears that the award was based solely on the reports of investigators of the commission, and that petitioners had never had an opportunity to present evidence sustaining their theory of the case. It showed the following factual situation:

" . . . that deceased was working as a powderman at the time of the injury which resulted in his death; that the regular scheduled wages of powdermen were $8 per day; that on this particular type of job they worked six days per week, but only two

weeks out a month, and that deceased had been working on the particular job for only three and one-half days at the time the accident occurred. . . . ''

*Hershkowitz* v. *Arizona Highway Department, supra,* and we held that such facts showed the wages of deceased on which compensation should be based, under section 56–952, Arizona Code 1939, was $96 instead of $50 per month, and set aside the award. The commission then held hearings on May 26 and August 4, 1941, at which time petitioners were permitted to, and did, present a great deal of evidence in support of their theory of the situation. The commission then, considering both this evidence and the record on which the previous award was based, made another award finding that the wages on which the award was based were $96 per month, and that petitioners were partially dependent parents. Petitioners still objected and asked for a rehearing, which was denied, and the matter is again before us for determination.

There are but two questions of fact involved, (a) what was the basic wage of deceased upon which the award should have been computed, and (b) were petitioners totally or only partially dependent upon him for support at the time of his death. In so determining, we must take into consideration not merely the original record but the evidence presented to the commission at the hearings after the first award was set aside. This evidence shows conclusively that deceased was employed as a powderman at the time of his death, and that the statutory wage of a powderman was $1 per hour or $8 per day of eight hours. The only question is the number of hours per month upon which the monthly wage should have been computed under section 56–952, *supra*.

It is the contention of the commission that the record shows the regular employment of powdermen in the class of work in which deceased was engaged at the time of his death was only two weeks out of a month, and that under the rule laid down in *Brisendine* v. *Skousen Brothers,* 48 Ariz. 416, 62 Pac. (2d) 326, the average monthly wage on which the award was to be based was $96.

It was urged by petitioners, on the contrary, that powdermen, being skilled workmen, were regularly employed on a full monthly basis, instead of only two weeks out of a month, and that the average monthly compensation was $208.

█ We have examined the evidence and we think the testimony of J. A. Quigley, who was the resident engineer in charge of the work when deceased was killed and who did not testify on this point when the previous award was made, is conclusive to the effect that men classified as skilled laborers in work of that class were not, as a rule, worked on the two weeks out of a month basis, but on a full time basis, and that powdermen were considered to be skilled laborers who were kept on the work steadily as long as it lasted. Under those circumstances we think, under the Brisendine case, *supra,* the basis on which the award should have been made was the full time of twenty-six days out of the month, at the rate of $8 per day.

We consider next the question of dependency. We have read the testimony carefully and are impressed with the fact that all of the witnesses were trying to tell the exact truth on this point so far as they knew it. A fair summary of their evidence is as follows: Petitioner Harry Hershkowitz had lived for some forty years at Congress, during most of which time he had run a small general merchandise store. The

evidence is undisputed that so long as he was able to carry on his business he was a hard working, self supporting citizen. At some time in 1935 or 1936 he became seriously ill and was taken to a hospital in Phoenix, leaving the deceased and a younger brother to run the store. They were not as experienced in business as the father, and at the end of a year or so were obliged to give it up. The father returned home after, as he rather plaintively said to one of the investigators of the commission, ''when the Good Samaritan Hospital and Dr. Purcell got through with him he didn't have a cent.'' He owned some four or five small frame houses, his home and the building in which his store had been conducted. He rented these houses from time to time as best he could, but the average receipts over the period from his return from the hospital to the death of Adolph was only about $10 per month. He also had a few goats and chickens.

To the credit of petitioners be it said that they never applied for public aid. Adolph contributed practically all his earnings during this period to the support of his parents, but they were uncertain as to amount. Summing up the testimony, we think it may be said that all of the children contributed to the support of their parents as they were able, and the parents used what resources they had, but the mainstay of their support during this time was Adolph. The youngest surviving son did the best he could to help pay the family expenses, but he also was in poor health and could only secure odd jobs from time to time. Two daughters who lived at home part of this time also aided so far as they could in the maintenance of the family, while the other married children sporadically assisted as they were able.

Under the compensation law, the benefits to be paid under circumstances like those shown in the present case are:

"56–953. *Death benefits.*—(a) In the case of an injury causing death, the compensation therefor shall be known as a Death Benefit, and shall be payable in the amount, for the period, and to and for the benefit of the persons following: . . .

"6. To a parent (if there be no surviving wife, dependent husband, or child under the age of eighteen (18) years), if wholly dependent for support upon the deceased employee at the time of his death, twenty-five (25) per cent of the average monthly wage of the deceased during dependency, with an added allowance of fifteen (15) per cent if two dependent parents survive; and

"6a. If neither parent is wholly dependent, but one or both partly dependent, fifteen (15) per cent divided between them share and share alike; . . . ."

It will be noted that there is no intermediate ground. If the dependency is total and both parents survive, they are to receive forty per cent. of the wages earned by the deceased. If the dependency is only partial, it makes no difference whether this partial support is ten or ninety per cent. of the total support of the parent, the award is but fifteen per cent. of the wages. It may be that the statute should proportion the award to the percentage of support, but it does not do so, and we can only enforce the law as it is written.

We hold, therefore, that under the evidence the commission should have awarded to petitioners fifteen per cent. of the wages of deceased, based on a monthly average earning of $208.

The award is set aside.

McALISTER and ROSS, JJ., concur.