507 P.2d 130

**STATE COMPENSATION FUND and Central Commercial Company, Petitioners,**

**v.**

**Adelaido P. DIAZ, Respondent Employee, The Industrial Commission of Arizona, Respondent.**

**Adelaido P. DIAZ, Petitioner,**

**v.**

**The INDUSTRIAL COMMISSION of Arizona, Respondent,**

**Central Commercial Company, Respondent Employer,**

**State Compensation Fund, Respondent Carrier.**

**Nos. 1 CA–IC 637, 1 CA–IC 638.**

Court of Appeals of Arizona, Division 1, Department B.

March 13, 1973.

Courtney L. Varner, Phoenix, for petitioners.

William B. Revis, Ltd., Phoenix, for respondent employee.

William C. Wahl, Jr., Chief Counsel, The Industrial Commission of Arizona, Phoenix, for respondent.

Robert K. Park, Chief Counsel, State Compensation Fund, Phoenix, for respondent carrier.

JACOBSON, Chief Judge, Division 1.

This case presents, by two separate writs of certiorari, one by the State Compensation Fund and the other by the injured workman, whether the Industrial Commission properly determined the claimant's average monthly wage and his loss of earning capacity.

On February 17, 1962, Adelaido P. Diaz sustained a broken right foot while employed as a laborer for Central Commercial Company in its lumber yard operation at Kingman, Arizona. After numerous hearings, awards, amended awards and further hearings, the Commission entered an award determining Mr. Diaz's average monthly wage to be $148.13. This award was the subject of a writ of certiorari to this court which set aside the award of the Commission on the basis that the Commission should have used the comparable employment test in establishing average monthly wage rather than the claimant's prior earnings in unrelated employment. Diaz v. Industrial Commission, 11 Ariz. App. 580, 466 P.2d 799 (1970).

Following the issuance of this court's mandate, an additional award was made by the Commission which was protested by both the State Fund and Mr. Diaz, and which resulted in an additional hearing being held on December 18, 1970. This hearing resulted in an award of the Commission determining that Mr. Diaz's average monthly wage was $259.98, and that he could reasonably be expected to earn the sum of $150.00 per month and, therefore, he sustained a 42.3% loss of earning capacity entitling him to an award of $60.49 a month.

The State Fund and the employer have sought review of that portion of the award determining the claimant's average monthly wage to be the sum of $259.98, contending the evidence shows that his average monthly wage was $3.42. They also contend that the evidence shows no loss of earning capacity. The claimant has sought review of that portion of the award determining that he sustained a 42.3% loss of earning capacity, contending his loss of earning capacity to be 100%.

The State Fund's first argument is based upon the proposition that at the time Mr. Diaz sustained his industrial injury he was a parttime (transient) employee of the lumber yard. Based upon this proposition, the Fund offered evidence from the payroll records of Central Commercial Company that transient laborers comprised 37 different workers during a calendar year who were paid a total cumulative wage of only $1,535.69. Dividing the number of employees in the transient labor classification into the total wages paid those employees results in an average monthly wage of $3.42 earned by the transient laborers employed by Central Commercial Company.

The fallacy in this reasoning is placing Mr. Diaz in the transient labor classification to begin with. Under the evidence presented at the December 18, 1970 hearing, we are of the opinion that the hearing officer and, hence the Commission, could have determined that Mr. Diaz was not part of the transient labor force.

The questioning of Mr. Diaz produced the following:

"Q. Tell us when you went to that job, were you expected to be at a job that could only last a few days, or was some other situation . . .

"A. I was expected to work permanently . . .

"Q. You were telling that you were expected to work how long?

"A. I was expecting to work permanently, steady and . . .

"Q. And did you talk about this situation to anyone?

"A. Yes.

"Q. And to whom were you talking?

"A. To Johnny Munoz, assistant foreman there.

"Q. What did Johnny Munoz tell you?

"A. He said depends on how dependable you are, you know, if I was there every morning at the right time for work."

There was evidence before the Commission in the form of applications for compensation and employer's report where Mr. Diaz was referred to as a "part-time" employee. Such evidence, however, merely raises, if at all, a conflict which the Commission resolved. Micucci v. Industrial Commission, 108 Ariz. 194, 494 P.2d 1324 (1972); Malinski v. Industrial Commission, 103 Ariz. 213, 439 P.2d 485 (1968). We are also of the opinion that the Commission could probably consider that at the time Mr. Diaz was injured that he had been working four consecutive days for which he was paid the sum of $37.50, based upon an hourly rate of $1.25. Using the Fund's computation of average monthly wage of $3.42, Mr. Diaz had already been paid eleven months' wages for three and one-half days' work. Under this state of facts we hold there is sufficient evidence to sustain the Commission's finding of an average monthly wage of $259.98, based upon an hourly rate of $1.25 and a forty-hour week. The Commission's award in this respect is affirmed.

Turning now to the issue of whether the Commission erroneously determined Mr. Diaz's loss of earning capacity, it is necessary to set forth some additional facts.

At the time of Mr. Diaz's industrial injury, he was also legally blind. This prior non-industrially related disabiliy together with his industrially related foot injury resulted in the initial award determining that Mr. Diaz's injury was unscheduled under A.R.S. § 23–1044, subsec. C (1969). Following his industrial injury, Mr. Diaz operated a "newstand for the blind" at the post office in Kingman for approximately three years. His earnings at this employment had reached approximately $150.00 per month. This employment was termi-

nated for reasons unrelated to either his blindness or his industrial injury. In 1966, Mr. Diaz was employed by McCulloch Corporation performing services in which his blindness was not an incapacitating factor. His earnings at this employment exceeded his pre-injury earnings. This employment was terminated after approximately nine months for reasons unrelated to his blindness or his industrial injury. Mr. Diaz was next employed as a dishwasher for approximately a year. This employment ended because of Mr. Diaz's blindness, he being unable to perform adequately the job. Mr. Diaz has not been employed since the dishwashing job.

At the hearing, several witnesses from the Kingman business community testified that Mr. Diaz, from their experience, was not employable in the Kingman area. A fair reading of this testimony, however, reveals that the reason underlying Mr. Diaz's unemployability is not his industrial injury, but his inability to see. Further, a reading of all the testimony shows that Mr. Diaz wholly failed to sustain his burden of proving that his loss of earning capacity was related to his industrial injury operating in connection with his blindness, but rather the evidence shows that the sole cause of his loss of earning capacity is related to his blindness alone, absent any residual effect from his broken foot. A.R.S. § 23–1044, subsec. C, dealing with compensation payable for an unscheduled injury, provides in part:

"[w]here the injury causes permanent partial disability for work, the employee shall receive during such disability compensation equal to fifty-five per cent of the difference between his average monthly wages before the accident and the amount which represents his reduced monthly earning capacity *resulting from the disability,* . . .." (Emphasis added.)

Here the evidence clearly shows that Mr. Diaz is not suffering from a loss of earning capacity "resulting from the disability," i. e. his foot injury, but that his loss of earning capacity results solely from

his inability to see. When this fact is coupled with the evidence that following Mr. Diaz's industrial accident he was receiving post-injury earnings from McCulloch Corp. in excess of his pre-injury earnings, which earnings raise at least a presumption that such post-injury earnings are commensurate with earning capacity, Laird v. Industrial Commission, 8 Ariz.App. 196, 445 P.2d 79 (1968), we are forced to conclude that the Commission's determination of loss of earning capacity is unsupportable by the evidence.

For the foregoing reasons, the award of the Industrial Commission determining that Mr. Diaz suffered a loss of earning capacity attributable to his industrial injury is set aside.

EUBANK, P. J., and HAIRE, J., concur.