567 P.2d 1224

**Aurora LE DUC, Petitioner,**

v.

**The INDUSTRIAL COMMISSION of Arizona, Respondent,**

**Arden-Mayfair, Inc., d/b/a El Rancho Markets, Respondent Employer,**

**Great American Insurance Co., Respondent Carrier.**

**No. 1 CA–IC 1577.**

Court of Appeals of Arizona, Division 1, Department C.

Aug. 4, 1977.

Davis, Eppstein & Tretschok by Robert W. Eppstein, Tucson, for petitioner.

John H. Budd, Jr., Chief Counsel, The Industrial Commission of Arizona, Phoenix, for respondent.

Shimmel, Hill, Bishop & Gruender, P.C. by J. Russell Skelton, Phoenix, for respondents Employer and Carrier.

## OPINION

JACOBSON, Presiding Judge.

On this review the petitioner questions the sufficiency of the evidence to support

the Commission's finding which limited her loss of earning capacity to 39.26%. Precisely, is there any reasonable evidence that the petitioner can be employed as a restaurant hostess/cashier?

Petitioner, Aurora Le Duc, while employed as a check-out cashier at the El Rancho Market, suffered a sprained back on March 7, 1974. Petitioner's claim was accepted for workmen's compensation benefits by the respondent carrier, Great American Insurance Co., and temporary compensation and active medical treatment benefits were paid until terminated April 24, 1975 by Notice of Claim Status. During the period of temporary partial disability, the petitioner returned to her pre-injury employment as a cashier with El Rancho Markets and was re-employed from November 17, 1974 until March 17, 1975. On this date, she terminated her employment due to her inability to continue such work because of pain and limitations of her industrial injury. The Notice of Claim Status also determined that the subject industrial injury resulted in a permanent partial disability of five percent permanent functional impairment.

Subsequent to the Notice of Claim Status closing her claim and the Notice of Permanent Disability, the Commission determined loss of earning capacity. This determination was that petitioner had sustained a 39.20% reduction in monthly earning capacity and was entitled to the sum of $143.58 per month. In particular, the findings and award were:

> "The medical limitations relative to her industrial injury would not preclude her working as a cashier/hostess in a restaurant or comparable work thereby sustaining the above-mentioned loss of earning capacity."

Timely Requests for Hearing directed to this determination were filed by both the petitioner and the carrier, the petitioner contending that she had a total loss of earning capacity and the carrier contending she suffered no loss of earning capacity. Pursuant to these Requests, a formal hearing was conducted before the Industrial Commission on November 3, 1975.

Thereafter, the hearing officer entered his findings, the material one dealing with loss of earning capacity being:

> "11. The applicant does have the mental and physical capacity to undertake jobs such as a cashier/hostess in a restaurant or comparable work which would have paid her the monthly sum of $403.84 on the date of her industrial injury on March 7, 1974 (citation omitted). The applicant has, therefore, sustained a 39.26% reduction in her monthly earning capacity, entitling her to the monthly sum of $143.58 or as the law provides . . . ."

As can be noted, this is exactly the amount of loss of earning capacity that was found by the Commission, ex parte, under the authority of A.R.S. § 23–1047(B). The petitioner contends that the only evidence presented at the hearing relative to cashier/hostess jobs was that petitioner was unable to perform them; that there was no evidence as to their availability, and therefore the hearing officer's decision lacks evidentiary support. The carrier counters this argument by contending that in any event, the petitioner was not prejudiced by this lack of evidentiary support, since the evidence presented clearly shows petitioner suffered no loss of earning capacity whatsoever.

Turning first to the carrier's contention of lack of prejudice, the evidence is not that clear that in fact no loss of earning capacity was absolutely proven. Like most loss of earning cases, the evidence here was susceptible of interpretation by the trier of fact and we cannot say, as a matter of law, that the hearing officer was required to find no loss of earning capacity. We therefore cannot say that petitioner was not prejudiced by the alleged lack of factual support for the loss of earning capacity actually found to exist.

In reviewing the evidence presented at hearings relative to the hostess/cashier job found by the hearing officer to be performed by the petitioner, this evidence, to say the least, is scanty. The sole evidence

on this point comes from five "Educational Survey and Physical Demands and Working Condition Forms" filled out by a graduate student in Vocational Rehabilitation at the University of Arizona. The information was obtained by interviewing waitresses at five business establishments located in Tucson, Arizona. While these forms purport to show the amount of time spent in standing, sitting, walking, carrying, etc., they are non-specific as to the actual duties of the job. Moreover, they are completely silent as to the availability of these jobs, not only in the specific establishments reflected in the forms, but as to cashier/hostess jobs generally in the Tucson area. Also, the forms indicate that the jobs are all part time and pay an average base salary of $2.00 per hour.

At this point, petitioner argues that the employment expert called by the petitioner testified that, in his opinion, petitioner was not employable in the position of a cashier/hostess. She then argues that this expert opinion, like opinions of medical experts, is conclusively binding on the trier of fact and therefore, in any event, evidence as to the demands, availability and wages of a cashier/hostess job becomes immaterial. We disagree.

■ In the last analysis, the opinion of an employment expert is, that based upon certain factors such as the claimant's age, appearance, education and physical condition compared to the demands of a particular job and its availability, the claimant is or is not employable. In our opinion, while the employment expert may bring to the trier of fact his expertise in this area (which makes his *opinion* admissible) this type of evidence is not so completely outside the understanding of the average layman, that a contrary conclusion cannot be reached. As with most expert opinions, the trier of fact is entitled to consider it, but give it only the weight to which he deems it is entitled.

Returning then to the evidence before the hearing officer, we have serious doubts that the forms filled out by the graduate student afford a satisfactory basis for determining that petitioner could perform this job. Not only are the demands of the job not specified, there is no evidence of their availability. *See Dye v. Industrial Commission,* 23 Ariz.App. 68, 530 P.2d 914 (1975); *Germany v. Industrial Commission,* 20 Ariz. App. 576, 514 P.2d 747 (1973). Moreover, they offered no evidentiary basis that the job of cashier/hostess would pay the sum of $403.84 per month as determined by the hearing officer. Taking the forms at face value and assuming they reflected an 8 hour day, 5 day a week job, the evidence shows they would only generate approximately $240.00 a month in income. In short, there was no evidence presented at the hearing supporting the hearing officer's determination as to dollar amount of loss of earnings.

■ Since the hearing officer's determination mirrored the previous findings of the commission's determination of loss of earnings under A.R.S. § 23–1047, it could conceivably be argued that this prior, ex parte, finding, in and of itself, could provide evidence to support the hearing officer's determination. Such an argument, in our opinion, would be without basis.

■ As we noted in *Germany v. Industrial Commission, supra,* the statutory obligation of the commission to determine loss of earning capacity, while based upon medical reports and other information, is merely the initial starting point of the earning capacity process. This determination, if not protested, can, of course, become final and binding, but like any other interim award of the commission, once it is protested, it becomes a nullity and cannot, in and of itself, afford an evidentiary basis for future awards. *Sandoval v. Industrial Commission,* 114 Ariz. 132, 559 P.2d 688 (1976); *Massie v. Industrial Commission,* 113 Ariz. 101, 546 P.2d 1132 (1976). This does not mean that the evidence used to establish that determination cannot be reintroduced by the parties at the hearing. However, in absence of that reintroduction, the prior finding is of no evidentiary value.

Finding that the hearing officer's decision is unsupported by reasonable evidence, the same is set aside.

FROEB, C. J., and OGG, J., concur.