632 P.2d 995

**DAVID MURDOCK DEVELOPMENT COMPANY, Petitioner Employer,**

**Fidelity & Casualty Co. of New York, Petitioner Carrier,**

v.

**The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,**

**Robert Polter, Respondent Employee.**

**No. 1 CA–IC 2415.**

Court of Appeals of Arizona, Division 1, Department C.

June 25, 1981.

Jones, Teilborg, Sanders, Haga & Parks, P. C. by J. Russell Skelton, Phoenix, for petitioners.

Calvin Harris, Phoenix, Chief Counsel, The Industrial Commission of Arizona, for respondent.

Miller, Pitt & Feldman, P. C. by Barry N. Akin, Tucson, for respondent employee.

OPINION

JACOBSON, Judge.

The basic issue on this appeal is whether a carrier, which has previously given permission to a lump sum commutation of an award for permanent partial disability, may withdraw that permission and if so, under what conditions.

The respondent employee sustained an industrially related back injury on February 9, 1977, while working as a carpenter for the David Murdock Development Company. The petitioner carrier accepted his claim for workmen's compensation benefits and ultimately terminated medical benefits and temporary compensation with a notice finding that the employee had sustained permanent impairment. On June 23, 1978, the Industrial Commission rendered an award determining that the employee had sustained a 20% loss of earning capacity attrib-

utable to this industrially caused permanent impairment, which entitled him to a monthly award of $110. The award was predicated on a stipulation that although the employee could not return to his former employment as a carpenter, he was able to work as a cabinet maker or trim carpenter earning $800 per month as of the date of injury. This award became final.

After receiving this award, the employee undertook to obtain the carrier's consent to a lump sum commutation of these benefits. At this juncture, the carrier made no effort to discover the employee's current earnings. It nevertheless approved a petition for lump sum commutation prepared by counsel for the employer.[1] This petition included the following representations:

2. That as a result of said disability, applicant is unable to engage in some of the types of physical activity for which he has been trained and in which he has had experience;

3. That applicant has returned to the type of employment indicated in the Decision Upon Hearing and Findings and Award for Unscheduled Permanent Partial Disability dated June 23, 1978 and is capable of performing that type of work.

The employee at this time actually was earning in excess of $1,000 per month, which rolled back to the prevailing wage scale at the time of his industrial injury exceeded $800 per month.

After the employee filed this petition on December 24, 1979, the Industrial Commission required him to complete a questionnaire. The completed questionnaire returned to the commission indicated that the employee was currently employed performing "carpentry" and earning "Approx. $1,000 mo." The record is unclear if and when the carrier received a copy of this questionnaire.

On January 11, 1980, pursuant to A.R.S. §§ 23–108.03.B.2 and 23–1067.B, the commissioners of the Industrial Commission issued an award granting the petition to commute the employee's award to a lump sum in the amount of $14,812.60. The award specifically found that this commutation was in the best interest of all parties and finalized all benefits as provided in the June 23, 1978 award. The award also contained the following notice:

IT IS FURTHER ORDERED if you do not agree with this award and wish a hearing on the matter, your written Request for Hearing must be received . . . within TEN (10) DAYS after the mailing of this Award, pursuant to A.R.S., Section 23–941 and 23–947. IF NO SUCH APPLICATION IS RECEIVED WITHIN THAT TEN DAY PERIOD, THIS AWARD IS FINAL.

When the employer received a copy of this award, it immediately notified the carrier that it had information that the employee's current earnings exceeded $1,000 per month. After verifying this information, the carrier timely filed a request for hearing protesting the January 11, 1979 award. The reason given for the hearing request was that a lump sum award should not have been issued because the employee had no loss in earning capacity. On January 31, 1980, the carrier filed a petition for rearrangement to establish an increase in the employee's earning capacity which has been held in abeyance pending the resolution of this review.

On January 29, 1980, the employee's counsel sent a letter to the Industrial Commission confessing that the wage information contained in the questionnaire was in error. Counsel averred that the mistake was the result of secretarial error, not the result of an intentional misrepresentation.

Pursuant to the carrier's request, a formal hearing was held. This was not an evidentiary hearing. Rather, legal arguments were presented to the commissioners as to the proper disposition of this case. During the course of his argument, counsel for the carrier withdrew the carrier's con-

---

1. Counsel for respondent employee appearing in this Court did not represent the respondent employee before the Industrial Commission un-

til March 4, 1980 when substituted for respondent employee's former counsel.

sent to the petition for a lump sum commutation.

On May 22, 1980, the Industrial Commission, with one dissenter, issued a decision upon hearing granting a lump sum commutation. The findings reiterated those made in the earlier award, but were silent as to the effect of the withdrawal of the carrier's consent. The award also included a notice requiring any party aggrieved by the award to apply to this court within 30 days for special action review. The carrier timely brought this Special Action—Industrial Commission.

On appeal, the carrier raises two issues: (1) whether the carrier's withdrawal of its consent to the petition for lump sum commutation deprived the Industrial Commission of jurisdiction to further consider the petition; (2) assuming arguendo the commission had jurisdiction, whether it abused its discretion in granting the lump sum commutation because the award was based on erroneous information.

A.R.S. § 23–1067.B provides in relevant part that "The commission may allow commutation of compensation pursuant to § 23–1044, subsection C, . . . to a lump sum not to exceed twenty-five thousand dollars, *with the consent of the carrier liable to pay the claim, . . . .*" (Emphasis added.) In furtherance of this provision, the commission has promulgated A.C.R.R. R4–13–122 which provides as follows:

A. If a petition for a lump sum commutation is filed in an unscheduled case, the Commission cannot grant such petition unless carrier approves of such petition.

B. If the Commission has the carrier's approval, then a primary consideration will be whether more net income per month will be generated after receipt of the lump sum than the applicant is presently receiving. The granting of a lump sum petition is the exception and will only be granted if the facts demonstrate a reasonable basis for financial betterment or rehabilitation of the claimant.

C. The burden of proving that the commutation of compensation satisfies the criteria in B is on the applicant.

The application of this rule to the initial petition for lump sum commutation is unproblematic. Unless the carrier consents to this petition, the commission is without authority to exercise its discretion to grant a lump sum commutation. The application of the rule to this case, however, where the carrier initially consented to the petition and the commission administratively approved it, but after timely protesting this administrative determination the carrier withdrew its consent to the petition, is of first impression.

The critical dispute between the parties centers on the effect of the timely request for hearing protesting the January 11, 1980 award. The carrier argues that the protest rendered the commission's administrative determination a nullity. It further argues that because the protest nullified this determination, the carrier's withdrawal of its consent to the petition deprived the commission of jurisdiction to further consider it. On the other hand, the employee argues that the request for hearing merely afforded the parties an opportunity to present evidence as to whether or not commutation was in the employee's best interest.

The carrier relies on *Le Duc v. Industrial Commission,* 116 Ariz. 95, 567 P.2d 1224 (App.1977), as authority for its argument. That case concerned the effect of a timely protest of an interim administrative loss of earning capacity determination. Pursuant to A.R.S. § 1047.C, a timely protest of this interim determination results in a de novo hearing before an administrative law judge. The *Le Duc* court held that the protested determination has no evidentiary value at this de novo hearing. The court's reference to the interim determination as a nullity occurred in this restricted context.

In our opinion *Le Duc* does not support the carrier's position. The restricted reference noted above does not imply that by protesting the commission's initial determination the carrier was in the same position to unilaterally withhold its consent to a lump sum commutation as it was in before the petition was filed. Rather, that consent

triggered commission action which resulted in hearings and an award. To simply allow the carrier, at any time before finality had attached to the commission's action, to unilaterally withdraw that consent would not be conducive to an orderly administrative process.

Although we disagree with the carrier's argument that it had an absolute right to withdraw consent, we also reject the employee's contention that the circumstances surrounding the obtaining of the carrier's consent to the petition were not material to the commission's review of its initial determination. The carrier's consent is a prerequisite to the commission's action. *See* A.R.S. § 23–1067.B. If the carrier had good cause to withdraw its consent, this prerequisite is lacking. It is the purpose of administrative review to permit the administrative body to correct errors at the administrative level. *See generally Larson v. Industrial Commission*, 114 Ariz. 155, 559 P.2d 1070 (App.1976).

It is undisputed that the carrier consented to the petition without knowledge of the employee's actual earning capacity. When it gave this consent, it had no reason to suspect that the employee's earning capacity exceeded the capacity determined in the recent award. The petition for lump sum commutation prepared by the employee's counsel artfully avoided disclosing his actual earning capacity while creating the impression that his earning capacity was as contemplated in the previous award.

Under these circumstances, we believe the carrier had at least made a prima facie showing of good cause to withdraw its consent to the petition for commutation. Furthermore, there is no indication in this case that the employee reasonably and detrimentally changed his position in reliance on the carrier's consent. Since we are unable to determine whether the commission reached the issue of the good cause withdrawal of the carrier's consent, the award is set aside.

WREN, Acting P. J., and FROEB, J., concur.