683 P.2d 309

Inez **PENA** (Deceased); **Emma Alonso Pena** (Widow), Petitioner Claimant,

v.

The **INDUSTRIAL COMMISSION OF ARIZONA,** Respondent,

**A & H Dairy,** Respondent Employer,

**Paula Insurance Company, c/o Pan American Underwriters,** Respondent Carrier.

**A & H DAIRY,** Petitioner Employer,

**Paula Insurance Company, c/o Pan American Underwriters,** Petitioner Carrier,

v.

The **INDUSTRIAL COMMISSION OF ARIZONA,** Respondent,

Inez **Pena** (Deceased); **Emma Alonso Pena** (Widow), Respondent Claimant.

Nos. 1 CA–IC 2898, 1 CA–IC 2901.

Court of Appeals of Arizona, Division 1, Department A.

April 3, 1984.

Review Denied May 22, 1984.

---

**512**

Ely, Bettini & Ulman by Sam Insana, J. Wayne Turley, Phoenix, for petitioner/respondent Pena.

Sandra Day, Chief Counsel, Indus. Com'n of Ariz., Phoenix, for respondent Indus. Com'n.

Spencer K. Johnston, Phoenix, for respondent/petitioner employer and carrier.

## OPINION

GRANT, Judge.

In addition to questioning the constitutionality of A.R.S. § 23–1046(C), this special action involves the propriety of the administrative law judge's award determining the average monthly wage of Inez Pena, deceased, to be $874.09. All parties on appeal contend that the administrative law judge applied an improper formula in determining the average monthly wage.

At the hearing on the issue the parties entered into the following stipulations:

MR. JOHNSTON: We also agree that Mr. [Inez] Pena was paid at the same rate as other employees who worked for this employer, whose employees were there on a full-time, regular basis, which was $30 per day for seven days per week, or $210 per week, plus $100 for housing.

We further stipulate and agree that the work that Mr. Pena performed was full-time, regular work which was available to him on a full-time, regular work basis, the same as the co-employees, and he was paid accordingly.

Mr. Insana, did I state it accurately and correctly?

MR. INSANA: I think there's a few additions. One is that the co-employees who earned the same amount of money were doing the same or similar work as was the applicant at the time of his accident.

MR. JOHNSTON: I attempted to state that, but that's correct.

MR. INSANA: Yes. And that the applicant was, at the time of his death, engaged in such employment of regular nonseasonal type of employment at the time of his death for A & H Dairies.

MR. JOHNSTON: We so agree.

Documents admitted by stipulation indicated that the deceased employee had worked for A & H Dairy (A & H) during the following periods and earned the following amounts:

| Dates | Gross Wages |
|---|---|
| Nov. 1, 1979–Feb. 8, 1980 | $2407.30 |
| June 13, 1980–Aug. 1, 1980 | $1160.95 |
| Jan. 1, 1981–Mar. 7, 1981 | $1890.00 |
| Aug. 19, 1981–Aug. 30, 1981 | $ 345.00 |

Pena also received housing valued at $100 per month during his employment with A & H. During those periods when he did not work for A & H the deceased, a non-resident alien, worked in Mexico for his father.

The administrative law judge determined that the deceased's average monthly wage was $874.09. This figure represents deceased's total earnings with A & H ($5,803.25) divided by the total number of days actually worked (228) and multiplying this number by the number of days in a month (30.416). The $100 per month housing allowance was then added.

Both parties contend that the administrative law judge employed an improper formula in determining the average monthly wage. In addition, Emma Pena (Pena), the widow-petitioner, argues that A.R.S. § 23–1046(C) is unconstitutional.

### AVERAGE MONTHLY WAGE

Pena argues that since the deceased had worked at A & H less than 30 consecutive days, that under A.R.S. § 23–1041(B) the proper formula is:

```
$    30.00   (stipulated daily wage)
x    30.416  (month)
$    912.48
│    100.00  (housing)
$  1,012.48
```

A & H contends that since the deceased was an intermittent worker the proper formula is:

```
$  3,395.95  (U.S. earnings 6/13/80 to 8/30/81)
÷      444   (total days)
```

$ 7.65
x    30.416   (month)
$ 232.68
+    100.00   (housing)
$ 332.68

■ In reviewing a decision by the Industrial Commission (Commission) by a special action this court has a very limited role. We must consider the evidence in a light most favorable to sustaining the award. *Perry v. Industrial Commission*, 112 Ariz. 397, 542 P.2d 1096 (1975). We are not the trier of fact and will therefore not disturb the findings of fact except where they cannot be supported on any reasonable theory of the evidence. *Nelson v. Industrial Commission*, 134 Ariz. 369, 656 P.2d 1230 (1982).

■ A.R.S. § 23–1041 provides in pertinent part:

A. Every employee of an employer within the provisions of this chapter who is injured by accident arising out of and in the course of employment, or his dependents in event of his death, shall receive the compensation fixed in this chapter on the basis of such employee's average monthly wage at the time of injury.

B. If the injured or killed employee has not been continuously employed for the period of thirty days immediately preceding the injury or death, the average monthly wage shall be such amount as, having regard to the previous wage of the injured employee or of other employees of the same or most similar class working in the same or most similar employment in the same or neighboring locality, reasonably represents the monthly earning capacity of the injured employee in the employment in which he is working at the time of the accident.

    *     *     *     *     *     *

D. The term "monthly wage" means the average wage paid during and over the month in which the employee is killed or injured.

The critical determination here, where the employee did not work continuously in the same employment for 30 days prior to the date of injury, is to calculate the employ-

ee's monthly earning capacity. *Miller v. Industrial Commission*, 113 Ariz. 52, 546 P.2d 19 (1976); A.R.S. § 23–1041(B).

■ The statute, however, does not prescribe any' formula to determine the amount which "reasonably represents the monthly earning capacity of the injured employee in the employment in which he is working at the time of the accident." A.R.S. § 23–1041(B). The Commission has the discretion to choose the most appropriate formula in any given case. *See, e.g., State Compensation Fund v. Arnold*, 20 Ariz.App. 62, 510 P.2d 61 (1973).

■ Courts have indicated that where A.R.S. § 23–1041(B) applies, then the claimant's earning capacity may be determined from similar employees' actual wages. *E.g., Vinyard v. Industrial Commission*, 106 Ariz. 164, 472 P.2d 33 (1970); *Johnson v. Industrial Commission*, 92 Ariz. 263, 375 P.2d 866 (1962); *State Compensation Fund v. Arnold; Diaz v. Industrial Commission*, 11 Ariz.App. 580, 466 P.2d 799 (1970), *appeal after remand* 19 Ariz.App. 328, 507 P.2d 130 (1973).

In *Hershkowitz v. Arizona Highway Department*, 56 Ariz. 494, 109 P.2d 46 (1941), *appeal after remand* 59 Ariz. 10, 121 P.2d 879 (1942), *overruled on other grounds Ross v. Industrial Commission*, 82 Ariz. 9, 307 P.2d 612 (1957), the Supreme Court approved the use of another formula based on the maximum the claimant could have earned in the employment at the time of injury. In *Hershkowitz* the Commission had determined claimant's average monthly wage to be $50. The court set aside the award on these facts: the deceased employee worked as a powderman at the time of the injury; the regular scheduled wages of powdermen was $8 per day; the type of job involved then required powdermen only 12 days a month; and the deceased had worked only three and one-half days at the time of the accident. The *Hershkowitz* court concluded that $96 per month reasonably represented the deceased's earning capacity. After a hearing upon remand the Commission's award, determining that $96 per month represented claimant's monthly

earning capacity, was affirmed. 59 Ariz. 10, 121 P.2d 879 (1942). Such a mathematical extrapolation is the formula proposed by Pena. *See also Miller v. Industrial Commission.*

■ A third approach was articulated in *Johnson v. Industrial Commission,* 92 Ariz. 263, 375 P.2d 866 (1962). The court stated:

> The Commission may consider the previous wage of the injured person if he had been employed a length of time reasonably sufficient in that neighborhood in the same employment to enable the Commission to determine what his average monthly wage would be.

*Id.* at 265–66, 375 P.2d at 868. At first blush the decision of the administrative law judge appears to follow this formula. However, the record does not support the conclusion that the deceased held the same position during each of his prior periods of employment with A & H. The only possible inference to the contrary is the weekly breakdown of the deceased's 1981 earnings with A & H which show the deceased earned $30 per day of work. Such a daily wage corresponds to the wage of the deceased on the date of the accident. That is a far cry, however, from proving the deceased worked in the same position during those other time periods. We also note the use of an expanded wage base of approximately 2 years may prejudice claimants' rights due to factors such as inflation.

A & H argues that deceased's intermittent work record dictates a different formula be applied. *E.g., Pettis v. Industrial Commission,* 91 Ariz. 298, 372 P.2d 72 (1962). While the cases relied upon by A & H are § 23–1041(A) cases and thus inapplicable, we find support for this argument in *Johnson v. Industrial Commission.* The court in *Johnson* stated:

> [P]etitioner's work record is a factor to be taken into consideration in arriving at what reasonably represents his monthly earning capacity. The Commission may take into consideration petitioner's lost time from work due to his asthmatic condition and his drinking habits as they

affect his monthly earning capacity. See *Field v. Industrial Commission,* 73 Ariz. 133, 238 P.2d 953 (1951).

92 Ariz. at 266, 375 P.2d at 868. The Arizona Supreme Court in *Steward v. Industrial Commission,* 69 Ariz. 159, 211 P.2d 217 (1949), held:

> In arriving at what reasonably represents the monthly earning capacity of the injured employee in the employment in which he is working at the time he is injured, other factors than the daily, weekly, or monthly wage or scale of wages must be considered. The opportunity afforded for work in that particular employment whether it be intermittent or seasonal or whether it is continuous the year round is an important factor to be considered.

69 Ariz. at 177, 211 P.2d at 229.

■ The court in *Miller v. Industrial Commission* impliedly overruled the *Johnson* limitation while reaffirming the *Steward* limitation in stating:

> Petitioner's earning capacity is not to be determined by whether he intended to work steadily in the industry in which he is employed. The test is whether the employment not the worker is intermittent or erratic.

> \*    \*    \*    \*    \*    \*

> As was said in the English case of *Anslow v. Cannock Chase Colliery Co.,* L.R.App.Cas. (1909) 435, which we first quoted in *Brisendine v. Skousen Brothers,* 48 Ariz. 416, 420, 62 P.2d 326, 328 (1936):

> "The object of the Act broadly stated is to compensate a workman for his loss of capacity to earn, which is to be measured by what he can earn in the employment in which he is, under the conditions prevailing therein, before and up to the time of the accident. If he takes a holiday and forfeits his wages for a month, then that does not interfere with what he can earn. It is only that for a month he did not choose to earn. So, too, if there be a casualty accidentally stopping the work. But if it is part of the employ-

ment to stop for a month in each year, then he cannot earn wages in that time in that employment, and his capacity to earn is less, over the year."

*Id.* at 54–55, 546 P.2d at 21–22. Here the parties stipulated that the deceased at the time of his death was employed in full-time regular, and non-seasonal work. Thus, A & H's argument is contrary to the law.

■ For the foregoing reasons the award is set aside. On remand the administrative law judge can apply any of the three formulas identified in this opinion which is supported by the facts: (1) determination based on mathematical extrapolation and advocated by Pena, (2) determination based on similar employees in similar employment in the locality; or (3) determination based on the total actual wages of the deceased earned from A & H in an expanded base period, considering only periods when deceased worked for A & H in the same job, and provided the expanded wage base reasonably reflects deceased's monthly earning capacity at the time of his death. The Commission should choose, if at all, an expanded wage base which eliminates distortions from factors such as inflation.

### CONSTITUTIONALITY OF A.R.S. § 23–1046(C)

We now address the second issue raised by Pena since it will in all likelihood reappear at the new hearing. A.R.S. § 23–1046(C) provides:

A death benefit paid to an alien not residing in the United States shall be only sixty per cent of the amount specified in this section.

Pena advances two grounds in support of her contention that this statute is unconstitutional: (1) the statute impairs and violates treaties in force and therefore violates the supremacy clause and (2) the statute violates the equal protection clause.[1]

■ The cases relied upon by Pena in support of her supremacy clause argument are easily distinguishable. *Iannone v. Radory Construction Corp.*, 285 App.Div. 751, 1208, 141 N.Y.S.2d 311 (1955), *aff'd.* 1 N.Y.2d 671, 150 N.Y.S.2d 199, 133 N.E.2d 708 (1956), and *Antosz v. State Compensation Commissioner*, 130 W.Va. 260, 43 S.E.2d 397 (1947), both involved specific treaties granting equal treatment under workmen compensation laws. In *Iannone* the court focused on the applicable treaty provision with Italy which stated:

The nationals of either High Contracting Party, regardless of alienage or place of residence, shall be accorded rights and privileges no less favorable than those accorded to the nationals of the other High Contracting Party, under laws and regulations within the territories of such other High Contracting Party that * * * (b) grant to a wage earner or an individual receiving salary, commission or other remuneration, or to his relatives, heirs or dependents, as the case may be, a right of action, or a pecuniary compensation or other benefit or service, on account of occupational disease, injury or death arising out of and in the course of employment or due to the nature of employment.

285 App.Div. at 753–54, 141 N.Y.S.2d at 313. While in *Antosz* the applicable treaty clause with Poland which the court hinged its decision on provided:

"Article II. With respect to that form of protection granted by National, State, or Provincial laws establishing civil liability for injuries or for death, and giving to relatives or heirs or dependents of an injured party a right of action or a pecuniary benefit, such relatives or heirs or dependents of the injured party, himself

---

1. A & H contends that Pena waived any allegation of error on these issues by failing to object to the administrative law judge's decision not to hear the constitutional issue. *See Priedigkeit v. Industrial Commission,* 20 Ariz.App. 594, 514 P.2d 1045 (1973). There is authority that the commission cannot pass on the constitutionality of any statute, *cf. Arizona Corporation Commission v. Tucson, Gas, Electric Light & Power Co.,* 67 Ariz. 12, 189 P.2d 907 (1948), thus, it may be proper to raise the issue for the first time on appeal. The record reveals that in any event Pena properly preserved this issue for appeal.

**516**

a national of either of the High Contracting Parties and injured within any of the territories of the other, shall, regardless of their alienage or residence outside of the territory where the injury occurred, enjoy the same rights and privileges as are or may be granted to nationals, and under like conditions."

130 W.Va. at 262, 43 S.E.2d at 398.

■■■ In contrast, Pena cites no treaty between the United States and Mexico which has comparable language. *See Micaz v. Compensation Commissioner*, 123 W.Va. 14, 13 S.E.2d 161 (1941). Rather Pena relies on broad statements in such sources as the charter of the Organization of American States and the charter of the United Nations. While treaties are liberally construed, any construction should not be extended so as to infringe upon the Constitution of the United States or restrict the states' inherent powers. *Antosz v. State Compensation Commissioners*.

■■■ Pena's second argument is that A.R.S. § 23–1046(C) violates the equal protection clause of the fourteenth amendment to the United States Constitution. This very issue was decided adversely to Pena's position in *Jalifi v. Industrial Commission*, 132 Ariz. 233, 644 P.2d 1319 (App.), *appeal dism'd.* 459 U.S. 899, 103 S.Ct. 200, 74 L.Ed.2d 161 (1982). The principle of stare decisis dictates that previous decisions of this court are considered highly persuasive and binding, unless we are convinced that the prior decision is clearly erroneous or conditions have changed so as to render the prior decision inapplicable. *Castillo v. Industrial Commission*, 21 Ariz.App. 465, 520 P.2d 1142 (1974).

Although Pena advances some good arguments in behalf of her equal protection challenge, these arguments do not convince this court that we should overrule *Jalifi*.

Therefore, for the foregoing reasons the award is set aside and the cause remanded to the Industrial Commission.

EUBANK and HAIRE, JJ., concur.