873 P.2d 697

Marvin BRATZ, Petitioner,

v.

The INDUSTRIAL COMMISSION
OF ARIZONA, Respondent,

Barnard Construction Inc.,
Respondent Employer,

State Compensation Fund,
Respondent Carrier.

No. 1 CA–IC 93–0059.

Court of Appeals of Arizona,
Division 1, Department A.

April 21, 1994.

Taylor & Associates by Richard E. Taylor, Phoenix, for petitioner.

Anita R. Valainis, Chief Counsel, Indus. Com'n of Arizona, Phoenix, for respondent.

Bell & O'Connor, P.C. by Jeffrey R. Finley, Phoenix, for respondents Employer and Carrier.

## OPINION

EHRLICH, Judge.

Marvin Bratz petitions this court to review an Industrial Commission award granting permanent partial disability benefits and es-

tablishing an average monthly wage. For the reasons which follow, the award is set aside.

## FACTS [1] AND PROCEDURAL HISTORY

■ On July 28, 1991, after working for Barnard Construction for two weeks, Bratz sustained an industrial injury to his left leg and foot for which he received temporary compensation and active medical treatment. The State Compensation Fund terminated these benefits as of July 20, 1992, having determined that Bratz had a 23 percent permanent disability of his left leg. Bratz protested this decision.

The Fund had calculated that Bratz had an average monthly wage of $457.76 which it based on the wage pattern of two other employees, identified only as "Employee A" and "Employee B." The Commission approved the average monthly wage as determined by the Fund, which Bratz also protested.

After a consolidated hearing, the Commission found that Bratz had a 23 percent functional loss of his left leg and that "an average monthly wage of $457.76 reasonably, fairly and equitably represents" his earning capacity at the time of injury.[2] Accordingly, Bratz was awarded this wage for 11.5 months. The award was affirmed on administrative review and Bratz filed this special action.

On review, Bratz contends for a number of reasons that the administrative law judge ("ALJ") abused his discretion in determining his average monthly wage. We find that the ALJ erred but for reasons other than those asserted by Bratz.

■ A claimant has the burden of establishing his average monthly wage. *United Metro v. Industrial Commission*, 117 Ariz. 47, 49, 570 P.2d 818, 820 (App.1977). The ALJ must examine the wage records and testimony, and render a decision regarding the claimant's average monthly wage; this is

the final decision of the Commission. *Id.* We will not set aside the Commission's determination of a claimant's average monthly wage if it is reasonably supported by the evidence presented. *E.g., id.*

■ It is undisputed that Bratz was employed by Barnard Construction for fewer than 30 days prior to his injury. *See* Ariz. Rev.Stat.Ann. ("A.R.S.") § 23–1041(B). Given such circumstances, the claimant's average monthly wage may be gleaned from similarly-situated employees' actual wages. *Pena v. Industrial Commission*, 140 Ariz. 510, 513, 683 P.2d 309, 312 (App.1984). This method, which apparently was used by the Fund and relied on by the ALJ, is preferred if a claimant has a sporadic work history but the industry in which he worked at the time of the injury offered steady employment. *See State Compensation Fund v. Arnold*, 20 Ariz.App. 62, 63, 510 P.2d 61, 62 (1973).[3]

At the hearing, Bratz testified that, during the two weeks he was employed by Barnard Construction, he had only one day off and typically worked ten-hour days. He further explained that, for the first 40 hours in a week, the employer paid him an hourly wage of six dollars and thereafter he received nine dollars per hour. Bratz offered his 1991 W–2 statement from Barnard Construction which showed that his compensation for those two weeks of pre-injury employment totaled $708. Bratz's brother testified that he also worked for that employer, performing essentially the same job as Bratz, for which he received $250 per week gross pay. Finally, Fernando Shaw, another co-worker of Bratz, explained that he performed the same job as Bratz and worked 12 hours per day, seven days a week for six dollars an hour.

The Fund recommended an average monthly wage calculation for which it used the wage pattern of two employees unidentified not only as to name but position. *See*

---

1. We view the facts in the light most favorable to sustaining the award. *E.g., University of Arizona v. Industrial Commission*, 136 Ariz. 365, 367, 666 P.2d 465, 467 (1983).

2. This average monthly wage computes to an average daily wage of $15.05.

3. The ALJ may, in the alternative, establish a claimant's wage on an extrapolation of his hourly or daily wage. *Pena*, 140 Ariz. at 513–14, 683 P.2d at 312–13. This is the approach suggested by Bratz.

A.R.S. § 23–1061(F). This unsubstantiated calculation, in turn, was approved by the Commission in its notice. *Id.; see also* A.R.S. § 23–1041. However, neither the calculation nor the notice was submitted for the ALJ's consideration, although included in Bratz's claims file.

█ Despite this evidentiary omission, the ALJ relied on the Commission's notice of average monthly wage approving the Fund's recommended wage to ascertain Bratz's average monthly wage. In his findings, the ALJ stated:

> the Industrial Commission's Notice of Average Monthly Wage approved a determination by Defendant Carrier that [Bratz's] average monthly wage was $457.76, based upon the "wage pattern of [2] other employees of insured employer." Based upon a review of the entirety of the evidence, the undersigned finds that an average monthly wage of $457.76 reasonably, fairly and equitably represents [Bratz's] wage earning capacity at the time of his injury, arrived at in a manner which is consistent with the requirements of Arizona statutory and case law.

Notably, the average monthly wage awarded by the ALJ is identical to that approved initially by the Commission and substantially less than the evidence adduced by Bratz. We thus must decide whether the ALJ, in determining Bratz's average monthly wage, improperly relied on the Commission's notice.

Although the issue has not been addressed previously, this court's decision in *Le Duc v. Industrial Commission*, 116 Ariz. 95, 567 P.2d 1224 (App.1977), a loss-of-earning-capacity case, is instructive. In that case, the Commission determined initially, as required by statute, that the claimant had sustained a 39.20 percent reduction in her earning capacity entitling her to $143.58 per month. The claimant protested. Despite the fact that the initial award was not introduced at the hearing, the ALJ found, as had the Commission, that the claimant was qualified to receive $143.58 a month based on a loss of earning capacity of 39.26 percent. On review, this court acknowledged that the Commission's initial earning capacity determination may

become final and binding if not protested but held that, "like any other interim award of the commission, once it is protested, it becomes a nullity and cannot, in and of itself, afford an evidentiary basis for future awards." *Id.* at 98, 567 P.2d at 1227. Accordingly, unless introduced at the hearing, the Commission's prior finding as to a claimant's loss of earning capacity is of no evidentiary value. *Id.*

█ We recognize that *Le Duc* delineates an exception to the general rule that, if a document other than a medical record or hospital report is contained in a claimant's claims file, the ALJ may consider such evidence in determining the award. *See* Ariz.Admin.Code R4–13–155(A), (B). The ALJ's determination of a claimant's average monthly wage presents a situation analogous to that of lost earning capacity, however, and we so extend the rationale of *Le Duc*. As with a claimant's loss of earning capacity, the Commission is statutorily directed to determine a claimant's average monthly wage. *Compare* A.R.S. § 23–1061(F) *with* A.R.S. § 23–1047(B); *see also* A.R.S. § 23–1041(B). This finding is an interim award by the Commission to which a claimant makes no contribution, as if it were *ex parte*; it becomes final only absent a protest. Once protested, like an initial loss-of-earning-capacity award, the interim award loses evidentiary validity and cannot support future awards without being submitted specifically for the ALJ's consideration. Consequently, when Bratz expressed his dissatisfaction with the Commission's award by requesting a hearing, *see Garza v. Industrial Commission*, 17 Ariz. App. 525, 528, 498 P.2d 599, 602, supplemental opinion, 18 Ariz.App. 223, 501 P.2d 399 (1972) (hearing request placed in issue propriety of award), the initial award could not, on its own, sustain the ALJ's subsequent award. *Le Duc*, 116 Ariz. at 98, 567 P.2d at 1227. Because the initial award was not reintroduced at the hearing, the only evidence properly before the ALJ was offered by Bratz, his brother and Shaw. *See United Metro*, 117 Ariz. at 49, 570 P.2d at 820 (ALJ must determine average monthly wage based

upon all evidence presented at hearing).[4] This evidence supported an average monthly wage significantly higher than that awarded by the Commission.

The ALJ improperly considered evidence not before him and thus the award was not supported by the record. Given this disposition, we need not reach Bratz's issues. The award is set aside.

GRANT, P.J., and VOSS, J., concur.

---

**4.** Despite the Commission's broad decision-making authority, it must accept the uncontradicted evidence in the record unless it states its reasons for not doing so. *Villanueva v. Industrial Commission,* 148 Ariz. 285, 288, 714 P.2d 455, 458 (App.1985). In the present matter, the ALJ did not assert that it was not following Bratz' evidence.